PAMELA S. KARLAN
Principal Deputy Assistant Attorney General
SAMEENA SHINA MAJEED
Chief, Housing and Civil Enforcement Section
R. TAMAR HAGLER (CA State Bar No. 189441)
Deputy Chief, Housing and Civil Enforcement Section
ANNA MEDINA (DC Bar No. 483183)
Acting Deputy Chief, Federal Coordination and Compliance Section
AURORA BRYANT (LA Bar No. 33447)
CHRISTOPHER D. BELEN (VA Bar No. 78281)
ABIGAIL A. NURSE (NY Bar No. 5244512)
ALYSSA C. LAREAU (DC Bar No. 494881)
Trial Attorneys
     U.S. Department of Justice, Civil Rights Division
     950 Pennsylvania Ave. NW – 4CON
     Washington, D.C. 20530
     Telephone: (202) 616-2602, Facsimile: (202) 514-1116
     E-mail: Aurora.Bryant@usdoj.gov

Attorneys for Plaintiff United States of America

[Additional Counsel Listed on Next Page]

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 5:19-cv-02298 AB (SPx) |
| Plaintiff, | **DISCOVERY MATTER** |
| v. | **JOINT STIPULATION RE PLAINTIFF UNITED STATES' MOTION TO COMPEL DEFENDANTS' DISCOVERY RESPONSES** |
| CITY OF HESPERIA, et al. | |
| Defendants. | Hearing Date: June 8, 2021<br>Hearing Time: 10:00am PT<br>Courtroom: 3 (or by Zoom) |
| | Fact Discovery Cutoff: Nov. 8, 2021<br>Expert Discovery Cutoff: Dec. 13, 2021<br>Pretrial Date: Mar. 4, 2022<br>Trial Date: Mar. 22, 2022 |
| | Honorable Sheri Pym<br>United States Magistrate Judge |

TRACY L. WILKISON
Acting United States Attorney
DAVID M. HARRIS
Chief, Civil Division
KAREN P. RUCKERT (CA State Bar No. 315798)
Chief, Civil Rights Section, Civil Division
MATTHEW NICKELL (CA State Bar No. 304828)
KATHERINE M. HIKIDA (CA State Bar No. 153268)
Assistant United States Attorneys
        Federal Building, Suite 7516
        300 North Los Angeles Street
        Los Angeles, California 90012
        Telephone: (213) 894-8805, Facsimile: (213) 894-7819
        E-mail: Matthew.Nickell@usdoj.gov

Attorneys for Plaintiff United States of America


ALESHIRE & WYNDER, LLP
ERIC L. DUNN, State Bar No. 176851
        edunn@awattorneys.com
STEPHEN R. ONSTOT, State Bar No. 139319
        sonstot@awattorneys.com
D. DENNIS LA, State Bar No. 237927
        dla@awattorneys.com
BRADEN J. HOLLY, State Bar No. 312098
        bholly@awattorneys.com
ERIKA D. GREEN, State Bar No. 285370
        egreen@awattorneys.com
3880 Lemon Street, Suite 520
Riverside, California 92501
Telephone: (951) 241-7338
Facsimile: (951) 300-0985

Attorneys for Defendants City of Hesperia, County of San Bernardino, and San Bernardino County Sheriff's Department

//

//

//

//

//

//

//

//

//

1

## **TABLE OF CONTENTS**

2    DESCRIPTION                                                                          PAGE

3                                           **Contents**

4    TABLE OF CONTENTS ................................................................................. 3

5    JOINT STIPULATION ................................................................................. 4

     I.    INTRODUCTION ............................................................................... 4

6          A.    United States' Statement ........................................................... 4

7                1.    Defendants Enacted and Implemented the Crime Free Program
                       to Discriminate Against African-American and Latino Renters ........ 5
8
9                2.    Defendants Provided Materially Incomplete Discovery Responses
                       Without Legally Supported Objections, Made Unsupported
10                     Claims of Privilege, and Failed to Cure After Notice ............................ 6

11         B.    Defendants' Position ................................................................. 7

12   II.   DISCOVERY AT ISSUE ...................................................................... 10

13         A.    The Court Should Compel Defendants to Produce Information
                 Concerning Certain Crime-Related Data Points That Appear to Have
                 Served as the Primary Justification for the Crime Free Program ............... 12
14
15               1.    Applicable Discovery Requests and Responses ..................... 14

                 2.    The United States' Position ........................................... 21
16
                 3.    Defendants' Position .................................................. 35
17
18         B.    The County and Sheriff's Department Have Failed to Provide
                 Relevant Police Activity and Residential Property Data, and
                 Information about the Systems in Which Such Data Is Stored .................. 39
19
20               1.    Applicable Discovery Requests and Responses ..................... 41

21               2.    The United States' Position ........................................... 53

22               3.    Defendants' Position .................................................. 59

23         C.    Defendants' Privilege Logs Show That They Are Inappropriately Withholding
                 Communications Based on Unsupported and Inapposite Privilege Claims .......... 63
24
                 1.    The United States' Position ........................................... 63
25
                 2.    Defendants' Position .................................................. 67
26
     CONCLUSION ......................................................................................... 70
27
           A.    The United States' Conclusion ................................................... 70
28
           B.    Defendants' Conclusion ........................................................... 72

**JOINT STIPULATION**

The parties, by and through their undersigned counsel, submit to the Court the positions of Plaintiff United States of America and Defendants City of Hesperia (the "City"), County of San Bernardino (the "County"), and San Bernardino County Sheriff's Department (the "Sheriff's Department") ("Defendants"), regarding the United States' motion to compel Defendants to provide complete responses to the United States' written discovery requests, including interrogatories issued pursuant to Federal Rule of Civil Procedure 33 and requests for production of documents issued pursuant to Federal Rules of Civil Procedure 34. In accordance with Local Rule 37-1, the parties met and conferred in a good faith effort to resolve this discovery dispute but were unable to reach a resolution.

## I.   INTRODUCTION

The United States' First Amended Complaint ("FAC")  alleges that Defendants enacted and enforced the City's Crime Free Rental Housing Program (the "Crime Free Program" or "Program") with the intent and effect of discriminating against African-American and Latino residents in violation of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3631, and Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d. The Court filed a scheduling order in this action on June 3, 2020. *See* Declaration of Matthew Nickell (hereinafter "Nickell Decl.") ¶2; *see also id.* Ex. 1, ECF No. 26. The current fact discovery cut-off date is November 8, 2021, and the current trial date is March 22, 2022. Nickell Decl. ¶2; *see also id.* Ex. 2, ECF No. 30.

### A.   United States' Statement

The United States moves for an order compelling Defendants to produce: (1) data and information used to justify the Program; (2) police activity and residential property data critically relevant to resolving material claims and defenses about that Program; and (3) responsive information withheld based on unsupported and insufficient privilege claims of privilege.

### 1.   Defendants Enacted and Implemented the Crime Free Program to Discriminate Against African-American and Latino Renters

The United States claims that Defendants enacted and enforced the Crime Free Program to remove African-American and Latino renters from their homes and prevent them renting elsewhere in Hesperia. The City enacted the Program in November 2015 after years of demographic change, and one city official specifically said it was designed to remedy a "demographical problem." The Program, which purported to be a crime reduction measure affecting only rental housing, required landlords to submit the names of rental applicants to the Sheriff's Department for screening, and to terminate tenancies when the Sheriff's Department notified them of "criminal activity"—which could include arrests, noise disturbances, or multiple calls for police services—"on or near" the property. Tasked with enforcing the ordinance, the Sheriff's Department targeted African-American and Latino renters and majority-minority areas of Hesperia. It demanded evictions of entire families due to the conduct involving one tenant or guests, evictions of victims of domestic violence, and evictions in the absence of concrete evidence of criminal activity. The U.S. Department of Housing and Urban Development ("HUD") investigated the Program and found Defendants had discriminated against residents on the basis of race and national origin in violation of the FHA, and that the City had done so under Title VI. The Sheriff's Department tracked the progress of the eviction campaign with a document listing more than 250 people it had targeted for eviction and the status of their housing.

Thus, material issues in this case include (1) the existence, scope, and nature of a purported crime problem in rental housing, i.e., the extent to which the problem was a pretext for discrimination; (2) how Defendants enforced the Program, including whether the enforcement disparately targeted African-American and Latino renters and residents of majority-minority neighborhoods and whether the enforcement was consistent with its purported crime-reduction rationale.

1
2
3

### 2.   Defendants Provided Materially Incomplete Discovery Responses Without Legally Supported Objections, Made Unsupported Claims of Privilege, and Failed to Cure After Notice

4

The United States seeks relief from the Court regarding three material deficiencies

5
in Defendants' discovery responses. The United States sent requests for production to

6
Defendants on April 23, 2020, to which Defendants responded on June 26, 2020 and

7
provided supplemental responses on November 13, 2020 (the City) and December 11,

8
2020 (the County and Sheriff's Department); and interrogatories on October 14, 2020 to

9
which Defendants responded on November 30, 2020. Nickell Decl. ¶¶6–10; *id.* Exs. 6–

10
19. Defendants' discovery responses were replete with boilerplate objections and

11
unsupported claims of privilege, and further failed to provide responsive documents and

12
information in response to requests concerning core issues in this case. *Id.* ¶12. After

13
making informal attempts to resolve these issues, the United States sent letters regarding

14
deficiencies in Defendants' responses to requests for production on October 30, 2020

15
and November 2, 2020, and regarding Defendants' interrogatory responses on February

16
11, 2021. *Id.* ¶12; *id.* Exs. 20–23. The parties had a series of meet-and-confer meetings

17
in November 2020 through March 2021, through which they reached resolution on many

18
discovery-related issues. *Id.* ¶13. However, despite the United States' various good-faith

19
efforts to compromise and work collaboratively with Defendants, Defendants were

20
unwilling to correct the following three deficiencies.

21

First, Defendants have not produced all relevant police activity data and related

22
information—including about who compiled the data and how—underlying the alleged

23
crime problem upon which Defendants based their decision to design and implement the

24
Program, which is thus relevant to a core defense and Defendants' intent. On February

25
24, 2021, the United States took the deposition of the Hesperia City Manager, whose

26
testimony confirmed that Defendants had failed to provide complete responses to

27
discovery requests about crime-related data points the Sheriff's Department generated to

28
justify the purported need for the Program. *Id.* ¶¶14–15; *id.* Exs. 24, 25; *see also infra*

1   Part II.A. Because crime prevention was the Program's purported primary rationale and

2   these data points were the main evidence, Defendants must provide complete

3   information about them and the documents and analyses that underlie them. *See id.*

4   More generally, Defendants have failed to provide data about police activity in

5   Hesperia or residential property data that identify which residential properties in the City

6   are rental properties and which are not, before and after Defendants began enforcing the

7   Program. This data is relevant to assess both Defendants' purported rationale for the

8   Program—that rental properties were disproportionately the site of crime—and whether

9   the Program was disparately enforced against African-American and Latino renters. *See*

10  *infra* Part II.B. Defendants' objections to producing the data lack support. Defendants

11  also provided no specific or sufficient information to show that production would be

12  burdensome and have evaded repeated attempts to resolve this issue through an informal

13  discussion with IT personnel about the relevant data systems. Nickell Decl. ¶17.

14  Finally, Defendants made unsupported and insufficient privilege-based objections

15  in response to most discovery requests, and their privilege logs indicate they are

16  improperly withholding responsive email communications, including communications

17  between City attorneys and Sheriff's Department staff preceding the Program's adoption

18  that appear not to have been covered by the privileges claimed. *See infra* Part II.C.1.

19  They also asserted other privileges without support and fully withheld communications

20  between non-attorney staff forwarding or allegedly discussing attorney communications

21  with other non-attorneys, which, at most, should have been partially redacted. *See id*.

22  **B.   Defendants' Position**

23  Defendants have produced in excess of 35,000 documents (not pages) in this case,

24  yet Plaintiff, United States ("USA") remains unreasonably convinced that Defendants,

25  City of Hesperia, County of San Bernardino, and San Bernardino County Sheriff's

26  Department (collectively, "Defendants") are hiding the "smoking gun" based on the

27  grounds asserted in this Stipulation. After dozens of teleconferences and meet and confer

28  emails exchanged between the parties between November 2020 to present (*see*

Declaration of D. Dennis La ("La Decl.")), Defendants have produced all documents reasonably within its custody or control to the USA related to the Crime Free Ordinance of 2015 and 2017.  The USA wants more, much more.  According to the USA, they are entitled to every single and last "criminal" record involving the City of Hesperia from 2015 to present – whether or not they relate to the Crime Free Ordinance – running afoul of discovery requirements pursuant to FRCP 26. Most of the documents relevant to the Crime Free Ordinance were previously turned over to HUD as part of their initial investigation beginning in or around 2016. The USA's attempt to extract more documents and records, that have nothing to do with the 2015 Crime Free Ordinance and revised 2017 Ordinance, is not justified.

What is more, based on the USA's preamble at section A above, Defendants are compelled to respond that the picture the USA paints is contradictory and hypocritical.  As alleged at paragraph 1 of the first amended complaint ("FAC"), the USA "brings this action pursuant to 42 U.S.C. § 3612(o) following an investigation and charge of discrimination by the Department of Housing and Urban Development ("HUD")…" alleging claims of intentional discrimination and disparate impact arising from the Crime Free Ordinance of 2015 and 2017.  Pursuant to HUD's own regulations and lease requirements for public housing authorities ("PHA"), however, provisions such as those included in the Crime Free Ordinance of 2015 and 2017 are *required* of PHA's.  For example, 24 C.F.R. § 966.4 expressly states (with emphasis added):

(I) Termination of tenancy and eviction—

(1) Procedures. The lease shall state the procedures to be followed by the PHA and by the tenant to terminate the tenancy…

(2) Grounds for termination of tenancy. The PHA may terminate the tenancy only for:
(i) Serious or repeated violation of material terms of the lease, such as the following:
(A) Failure to make payments due under the lease;

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> (B) Failure to fulfill household obligations, as described in paragraph (f) of this section;
>
> (ii) Being over the income limit for the program, as provided in 24 CFR 960.261.
>
> (iii) Other good cause. Other good cause includes, but is not limited to, the following:
>
> > (A) **Criminal activity** or alcohol abuse as provided in paragraph (l)(5) of this section. (Emphasis added.)
>
> * * *
>
> (5) PHA termination of tenancy for criminal activity or alcohol abuse…
>
> > (ii) Evicting other criminals.
> >
> > > (A) Threat to other residents. **The lease must provide** that any criminal activity by a covered person that threatens the health, safety, or right to peaceful enjoyment of the premises by other residents (including PHA management staff residing on the premises) or threatens the health, safety, or right to peaceful enjoyment of their residences by persons residing in the immediate vicinity of the premises is grounds for termination of tenancy.
> > >
> > > (B) Fugitive felon or parole violator. The PHA may terminate the tenancy if a tenant is fleeing to avoid prosecution, or custody or confinement after conviction, for a crime, or attempt to commit a crime, that is a felony under the laws of the place from which the individual flees, or that, in the case of the State of New Jersey, is a high misdemeanor; or violating a condition of probation or parole imposed under Federal or State law.
> >
> > (iii) Eviction for criminal activity.
> >
> > > (A) Evidence. The PHA may evict the tenant by judicial action for criminal activity in accordance with this section if the PHA determines that the covered person has engaged in the criminal activity, **regardless of whether the covered person has been arrested or convicted for such activity and without satisfying the standard of**

> **proof used for a criminal conviction**.
> (B) Notice to Post Office. When a PHA evicts an individual or family for criminal activity, the PHA must notify the local post office serving the dwelling unit that the individual or family is no longer residing in the unit.

The USA also complains about objections asserted in Defendants' responses to written discovery.  As stated in the La Decl., these objections were discussed between the parties and Defendants affirmed that none of the objections served to withhold or exclude any discovery.  They were asserted so as not to waive rights and based on the overbroad nature of the USA's discovery requests themselves.  In response to a specific meet and confer discussion, which also pointed out that the USA similarly asserted general objections in its responses to written discovery, Defendants specifically revisited the responses and determined that no discovery was being withheld and all non-privileged and responsive documents in response to the USA's requests were produced.

Lastly, as set forth below, despite multiple rounds of supplemental productions and responses, the USA failed FRCP 37 requirements by failing to meet and confer for specific items that the USA now claims were improperly withheld prior to initiating this Stipulation and the Motion to Compel.  The USA has stated that they will withdraw certain discovery items prior to the hearing on this motion if the discovery is provided in advance.  That side-steps the issue that the USA failed to meaningfully meet and confer as required per FRCP 37 prior to the filing of this motion in the first place.

## II.      DISCOVERY AT ISSUE

### United States' Position

The United States moves for an order compelling Defendants to produce (1) information about crime-related data points presented to the City Council before the Crime Free Program's enactment that appears to have served as support for the Program's purported crime-prevention rationale; (2) police activity and residential property data critically relevant to the resolving the factual claims and defenses about the

enactment and enforcement of the Program; and (3) responsive information and documents improperly withheld based on unsupported claims of privilege.[1] Further, because deposition testimony of a city official indicates that Defendants failed to produce responsive, non-privileged documents and information, the United States requests that the Court require Defendants to describe with specificity the steps taken to search for those responsive documents and information, so that the Court and the United States may assess the thoroughness of those searches.

**Defendants' Position**

As further explained below and contrary to the USA's assertions, Defendants have produced ample documentation responsive to the USA's requests to the extent that such documentation exists. The USA's motion is largely predicated on recent testimony of Nils Bentsen that a crime analysis team assisted him with data used to support the Crime Free program and that Defendants have failed to provide information related to this team. That deposition took place on February 24, 2021.  At no point prior to Mr. Bentsen's deposition did the USA ever meet and confer regarding issues concerning "data points." In fact, once the USA raised the issue after Mr. Bentsen's deposition seeking such information on April 7, 2021, Defendants took steps to obtain such discovery. That is, even though this information was not specifically requested in any prior written discovery,  Defendants are trying to provide such discovery as of the date of this Stipulation and are not refusing to produce this information to the extent that it can be ascertained. Yet the USA jumped to this motion to compel and failed to meet and confer regarding same.

---

[1] According to its counsel, the Sheriff's Department also has approximately eleven filing cabinets of documents directly related the Program's enforcement or implementation. Counsel have met and conferred regarding the production of these documents, and continue to negotiate in order to find a solution that satisfies Defendants' discovery obligations, is safe in light of the COVID-19 pandemic, protects sensitive information, and does not cause unnecessary delays due to scanning or copying. Those cabinets are not part of this Motion as the parties continue to negotiate in the hopes of resolving the issue without this Court's involvement. If, however, counsel exhaust those efforts, the United States will bring the issue to the Court.

Similarly, Defendants have not refused to provide information about police activity and residential property data related to the Crime Free Ordinance, to the extent that such documentation exists.  Again, Defendants have produced all documents and information available to them regarding the Crime Free Ordinance to date.  That is true, irrespective of Defendants' objections asserted in response to written discovery, with the exception of email communications set forth in the City's privilege log.   Still, the USA unreasonably claims that Defendants are withholding discovery, which is false.  Finally, Defendants should not be required to describe with specificity the steps taken to search for documents because this only applies in situations in which a party asserts that no responsive  documents exist. As articulated below, Defendants have provided responsive documents to each of the disputed requests.

**A.    The Court Should Compel Defendants to Produce Information Concerning Certain Crime-Related Data Points That Appear to Have Served as the Primary Justification for the Crime Free Program**

**United States' Position**

The United States sent requests for production to Defendants on April 23, 2020 relating to crime and police activity data that served as part of the rationale for the Program. Nickell Decl. ¶6; *id.* Exs. 6–8 (RFP Nos. 30, 34). Defendants provided responses to these requests for production on June 26, 2020. Defendants provided supplemental responses to the requests for production in November (the City) and December (the County and Sheriff's Department), and additional responsive documents between November and February (the County and Sheriff's Department) and in April (the City). *Id.* ¶¶7–8; *id.* Exs. 9–13. In addition, the United States served Defendants with interrogatories on October 14, 2020. *Id.* ¶9; *id.* Exs. 14–16. These included an interrogatory seeking data Defendants relied upon in enacting the Program and the names of all persons involved in gathering or analyzing the data (Interrogatory No. 4). *Id.* ¶¶9, 15. Defendants responded to this interrogatory on November 30, 2020.  *Id.* ¶10; *id.* Exs. 17–19. Their response generally referred to documents and identified one

1   individual as having contributed to gathering and analyzing the data: Nils Bentsen. *Id.*

2   ¶15; *id.* Exs. 17 (City Responses to Interrogatories), 19 (Sheriff's Department's

3   Responses to Interrogatories). The United States asserts that Defendants have failed to

4   provide materially complete responses to these requests and cannot rely on the

5   objections and privilege claims they have asserted to withhold the missing information.

6       **Defendants' Position**

7       Plaintiffs motion to compel "Crime-Related Data Points" is premature. To the

8   extent that the USA seeks "Crime-Related Data Points" they must first request it in

9   discovery. The USA's request for "Crime-Related Data Points" is particularly vague and

10  was not specifically requested in discovery. The USA has failed to meet and confer

11  related to this specific request in contravention of FRCP 37. Again, this particular

12  request is in response to certain testimony provided by Nils Bentsen on February 24,

13  2021. The USA did not assert such documents were being withheld until April 7, 2021.

14  Still, Defendants' counsel stated they would look into this discovery in light of Mr.

15  Bentsen's testimony. Without a response, the USA forwarded this Joint Stipulation on

16  April 14, 2021.

17      Defendants have supplemented their responses and production multiple times and

18  there has been no further meet and confer efforts by the USA related to the supplemental

19  productions. The USA has failed to specifically explain why Defendants' responses

20  remain insufficient and what specific additional information they seek related to

21  "Crime-Related Data Points" as part of the below requests, especially since the Requests

22  make no specific request or mention of "Crime-Related Data Points." The fact that the

23  USA contends that the responses should have included "Crime-Related Data Points"

24  even though there is no specific request or mention thereof evidences that the USA's

25  requests are in fact overbroad and unclear.  Again, Defendants have produced all known

26  non-privileged documents within its possession that are responsive to the below requests,

27  including PowerPoint presentations, communications related to the enactment of the

28  ordinance, City Council documents including all staff reports, and third party

communications.

To the extent Defendants should be compelled to produce additional information related to the Requests identified below, Defendants respectfully seek clarification as to what specific documentation and information is sought, as Defendants have produced all known responsive documentation within their possession and have not withheld any non-privileged information.

### 1.     Applicable Discovery Requests and Responses

### a.     RFP No. 30 to the County

Documents relating to the design and enactment of the 2015 Ordinance, including analyses, memoranda, notes, communications, reports, meeting minutes, agenda, packets and background materials prepared for your Board members, audio and/or video of your Board's meetings and any transcripts thereof, news reports, social media activity, statements or information provided by the public, and all documents considered during the process of enacting the 2015 Ordinance.

### b.     The County's June 26, 2020 Response to RFP No. 30

The General Objections are hereby incorporated by reference as if set forth in full herein.

Subject to and without waiving the foregoing objections and pursuant to the scope set forth in Rule 26(b), Responding Party responds as follows: Responding Party is unable to comply with this request because following a diligent search and reasonable inquiry, Responding Party is informed and believes that responsive documents are not within its possession, custody, or control. Responding Party reserves the right to supplement its production pursuant to Rule 26(e).

### c.     The County's Dec. 11, 2020 Supplemental Response to RFP No. 30.

Objection. Responding Party objects on the grounds that: (a) the Request is compound; (b) the Request lacks foundation and assumes disputed facts; (c) insofar as the Request seeks documents protected by the attorney-client privilege and/or the work-

product privilege, the records are privileged; and (d) insofar as the Request requires the production of documents subject to the deliberative process privilege, the records are privileged.

Subject to and without waiving the foregoing objection, Responding Party responds as follows: Defendant has produced all non-privileged responsive documents in its possession, custody, or control including documents bates stamped DEF001542-001591.

### d.    RFP No. 30 to the Sheriff's Department

Documents relating to the design and enactment of the 2015 Ordinance, including analyses, memoranda, notes, communications, reports, meeting minutes, agenda, packets and background materials prepared for the County's Board and/or the City's Council members, audio and/or video of the County's Board and/or the City's Council meetings and any transcripts thereof, news reports, social media activity, statements or information provided by the public, and all documents considered during the process of enacting the 2015 Ordinance.

### e.    The Sheriff's Department's June 26, 2020 Response to RFP No. 30

Because the Sheriff's Department and County of San Bernardino are essentially the same entity and the requests for production to each entity are identical, to avoid redundancy the Sheriff's Department refers Propounding Party to the County of San Bernardino's response to this request, which includes Sheriff Department-specific information, where appropriate.

### f.    RFP No. 30 to the City

Documents relating to the design and enactment of the 2015 Ordinance, including analyses, memoranda, notes, communications, reports, meeting minutes, agenda, packets and background materials prepared for your Council members, audio and/or video of your Council's meetings and any transcripts thereof, news reports, social media activity, statements or information provided by the public, and all documents considered during

1   the process of enacting the 2015 Ordinance.

2       **g.    The City's June 26, 2020 Response to RFP No. 30**

3       The General Objections are hereby incorporated by reference as if set forth in full

4   herein. Subject to and without waiving the foregoing objections, Responding Party

5   responds as follows:

6       Responding Party objects to the extent that this request may require the production

7   of documents subject to attorney-client and attorney work-product privileges, documents

8   that violate a third party's constitutional rights to privacy afforded by the United States

9   and California Constitutions (Cal. Const. Art. 1, § 1; *Griswold v. State of Connecticut*

10  (1965) 381 U.S. 479, 484 [right to privacy is guaranteed by the U.S. Constitution].

11  Responding Party objects to the extent that this request may require the production of

12  documents subject to the deliberative process privilege. (*Desert Survivors v. US*

13  *Department of the Interior* (N.D. Cal. 2017) 231 F.Supp.3d 368, 379.)

14      The foregoing objections notwithstanding, Responding Party will produce copies

15  of all non-privileged responsive documents in its possession.

16      **h.    The City's November 13, 2020 Supplemental Response to**

17          **RFP No. 30**

18      Objection. Responding Party objects on the grounds that: (a) the Request is

19  compound; (b) insofar as the Request seeks documents protected by the attorney-client

20  privilege and/or the work-product privilege, the records are privileged; (c) insofar as the

21  discovery violates third parties' constitutional rights to privacy afforded by the United

22  States and California Constitutions, the records are privileged (Cal. Const. Art. 1, § 1;

23  *Griswold v. State of Connecticut* (1965) 381 U.S. 479, 484 [right to privacy is

24  guaranteed by the U.S. Constitution]); and (d) insofar as the Request requires the

25  production of documents subject to the deliberative process privilege, the records are

26  privileged (*Desert Survivors v. US Department of the Interior* (N.D. Cal. 2017) 231

27  F.Supp.3d 368, 379).

28      Subject to and without waiving the foregoing objection, Responding Party

responds as follows: Defendant previously produced all non-privileged responsive documents in its possession, custody, or control including documents bates stamped CITY000001-000043, DEF000639-000647, DEF000677-000684, DEF000711-DEF000713, DEF000778-000785, DEF000857-000881, DEF001449-001460, and DEF001542-001591.

### i.     RFP No. 34 to the County

All documents, including data, information, and analyses, relating to Nils Bentsen's recommendation that the City adopt a crime free rental housing program, including analyses and reports created to assess the need for the crime free rental housing program, the data and documents used to generate such analyses and reports, notes and workpapers (including drafts and markups), and communications about the recommendation and its basis.

### j.     The County's June 26, 2020 Response to RFP No. 34

The General Objections are hereby incorporated by reference as if set forth in full herein. This request seeks documents subject to the official information privilege, law enforcement privilege, and documentation subject to investigatory files privilege, and official confidential information subject to public interest privileges. Subject to and without waiving the foregoing objections and pursuant to the scope set forth in Rule 26(b), Responding Party responds as follows: Responding Party will produce copies of documents responsive to this request that are within its possession. Responding Party reserves the right to supplement its production pursuant to Rule 26(e).

### k.     The County's Dec. 11, 2020 Supplemental Response to RFP No. 34

Objection. Responding Party objects on the grounds that: (a) the Request seeks documents that are not reasonably calculated to lead to admissible evidence; (b) the Request is compound; (c) the Request lacks foundation and assumes disputed facts; (d) the Request is overbroad and disproportionate violating FRCP 26(b)(1); (e) insofar as the Request seeks documents protected by the attorney-client privilege and/or the work-

product privilege, the records are privileged; (f) insofar as the discovery violates third parties' constitutional rights to privacy afforded by the United States and California Constitutions, the records are privileged; (g) insofar as the Request requires the production of documents subject to the deliberative process privilege, such records are privileged; and (h) insofar as the Request requires the production of documents subject to the joint defense privilege, such records are privileged.

Subject to and without waiving the foregoing objection, Responding Party responds as follows: Defendant has produced all non-privileged responsive documents in its possession, custody, or control including documents bates stamped DEF000392-413, DEF000599-000612, DEF000693-000721, DEF001211-001240, and DEF001549-0001591.

### l.     RFP No. 34 to the Sheriff's Department

All documents, including data, information, and analyses, relating to Nils Bentsen's recommendation that the City adopt a crime free rental housing program, including analyses and reports created to assess the need for the crime free rental housing program, the data and documents used to generate such analyses and reports, notes and workpapers (including drafts and markups), and communications about the recommendation and its basis.

### m.     The Sheriff's Department's June 26, 2020 Response to RFP No. 34

Because the Sheriff's Department and County of San Bernardino are essentially the same entity and the requests for production to each entity are identical, to avoid redundancy the Sheriff's Department refers Propounding Party to the County of San Bernardino's response to this request, which includes Sheriff Department-specific information, where appropriate.

### n.     RFP No. 34 to the City

All documents, including data, information, and analyses, relating to Nils Bentsen's recommendation that the City adopt a crime free rental housing program,

including analyses and reports created to assess the need for the crime free rental housing program, the data and documents used to generate such analyses and reports, notes and workpapers (including drafts and markups), and communications about the recommendation and its basis.

### o.    City's June 26, 2020 Response to RFP No. 34

The General Objections are hereby incorporated by reference as if set forth in full herein. Subject to and without waiving the foregoing objections, Responding Party responds as follows: Responding Party objects to the extent that this request may require the production of documents subject to attorney-client and attorney work-product privileges, documents that violate a third party's constitutional rights to privacy afforded by the United States and California Constitutions (Cal. Const. Art. 1, § 1; *Griswold v. State of Connecticut* (1965) 381 U.S. 479, 484 [right to privacy is guaranteed by the U.S. Constitution]. Responding Party objects to the extent that this request may require the production of documents subject to the deliberative process privilege. (*Desert Survivors v. US Department of the Interior* (N.D. Cal. 2017) 231 F.Supp.3d 368, 379.) Responding Party objects to the extent that this request may require the production of documents subject to the joint defense privilege. (*U.S. v. Schwimmer* (2d Cir. 1989) 892 F.2d 237, 243.)

The foregoing objections notwithstanding, Responding Party will produce copies of all non-privileged responsive documents in its possession.

### p.    City's Nov. 13, 2020 Supplemental Response to RFP No. 34

Objection. Responding Party objects on the grounds that: (a) the Request is compound; (b) the Request lacks foundation and assumes disputed facts; (c) insofar as the Request seeks documents protected by the attorney-client privilege and/or the work-product privilege, the records are privileged; and (d) insofar as the Request requires the production of documents subject to the deliberative process privilege, the records are privileged (*Desert Survivors v. US Department of the Interior* (N.D. Cal. 2017) 231 F.Supp.3d 368, 379).

01071.0047/713450.2

19

Subject to and without waiving the foregoing objection, Responding Party responds as follows: Defendant previously produced all non-privileged responsive documents in its possession, custody, or control including documents bates stamped CITY000001-000043 and DEF001542-001591.

### q.    Interrogatory No. 4 to the City

Please state all facts relating to your decision to develop the crime free rental housing program and enact the 2015 Ordinance, including but not limited to identifying all data, information, and sources compiled, analyzed, and considered in making that decision, all persons involved in identifying and compiling the data or information or performing the analyses relating to that decision, and all persons responsible for making that decision.

### r.    The City's Response to Interrogatory No. 4

Objection. Responding Party objects on the grounds that: (a) the Interrogatory is compound, containing multiple discrete subparts in violation of FRCP 33(a); (b) "relating to your decision to develop the crime free rental housing program and enact the 2015 Ordinance" is vague and ambiguous; (c) the Interrogatory lacks foundation and assumes disputed facts; (d) insofar as the Interrogatory seeks information protected by the attorney-client privilege and/or the work-product privilege, the discovery is privileged; and (e) insofar as the Interrogatory requires the production of documents subject to the deliberative process privilege, the records are privileged.

Subject to and without waiving the foregoing objections, Responding Party responds as follows: the Crime Free Ordinance was designed for the purpose of addressing crime and illegal activity within the city limits of Hesperia. Defendant further refers Propounding Party to documents bates stamped CITY 0007, DEF000682-000683, and CITY0012 as responsive to this Interrogatory pursuant to FRCP 33(d).

### s.    Interrogatory No. 4 to the Sheriff's Department

Please state all facts relating to your suggestion or recommendation that the City of Hesperia develop the crime free rental housing program and enact the 2015

Ordinance, including but not limited to identifying all data, information, and sources compiled, analyzed, and considered in making that decision, all persons involved in identifying and compiling the data or information or performing the analyses relating to that decision, and all persons responsible for making that decision.

### t. The Sheriff's Department's Response to Interrogatory No. 4.

Objection. Responding Party objects on the grounds that: (a) the Interrogatory is compound, containing multiple discrete subparts in violation of FRCP 33(a); (b) "relating to your decision to develop the crime free rental housing program and enact the 2015 Ordinance" is vague and ambiguous; (c) the Interrogatory lacks foundation and assumes disputed facts; (d) insofar as the Interrogatory seeks information protected by the attorney-client privilege and/or the work-product privilege, the discovery is privileged; and (e) insofar as the Interrogatory requires the production of documents subject to the deliberative process privilege, the records are privileged.

Subject to and without waiving the foregoing objections, Responding Party responds as follows: upon information and belief, the crime free rental housing program was recommended by former Captain Nils Bentsen. Defendant further refers Propounding Party to documents bates stamped COUNTY002375, COUNTY002376, CITY 0007, CITY0012, CITY000034-CITY000042, CITY000593, CITY000594, CITY000609, CITY000616, and DEF000682-000683, as well as Propounding Party's production consisting of US00000652, US00000651, US00000650, US00000648 as responsive to this Interrogatory pursuant to FRCP 33(d).

### 2. The United States' Position

Based upon the deposition testimony of Nils Bentsen, the City Manager and chief architect of the Crime Free Ordinance, *after* Defendants had responded to the above requests, it is clear that Defendants failed to produce responsive documents and information in their possession. Defendants' boilerplate objections are unsupported and inapposite, and thus cannot shield responsive information. Further, Defendants' claimed

01071.0047/713450.2

21

1   privileges—including attorney-client, work product, deliberative process, and joint
2   defense privileges, as well as a purported constitutional right to privacy—do not apply as
3   a matter of law. Thus, the Court should compel Defendants to provide complete
4   responses to these discovery requests. In addition to providing the outstanding
5   information, the United States asks that the Court require Defendants to describe with
6   specificity their searches so that the Court can ascertain whether the searches were
7   reasonable.

8        **a.     Deposition testimony strongly indicates that Defendants**
9             **failed to produce responsive documents and information**
10            **within their control.**

11       Defendants are required to search for and produce non-privileged responsive
12   information within their "possession, custody, or control," absent a valid objection.
13   Fed. R. Civ. P. 34; *see also* Fed. R. Civ. P. 26(g)(1). "Control" for this purpose
14   includes "the legal right to obtain documents upon demand." *In re Citric Acid Litig.*,
15   191 F.3d 1090, 1107 (9th Cir. 1999). "Thus, a party responding to a Rule 34 production
16   request is under an affirmative duty to seek that information reasonably available to it
17   from its employees, agents, or others subject to its control." *Hill v. Eddie Bauer*, 242
18   F.R.D. 556, 560 (C.D. Cal. 2007) (internal quotations and citations omitted).
19   Defendants are obligated to conduct a diligent search or make a reasonable effort to
20   obtain documents responsive to the United States' requests. *See Kaur v. Alameida*, No.
21   CV-F-05-276, 2007 WL 1449723, at *2 (E.D. Cal. May 15, 2007). A responding party
22   "must do more than merely assert that the search was conducted with due diligence;
23   rather, she must briefly describe the search to allow the Court to determine whether it
24   was reasonable." *Rogers v. Giurbino*, 288 F.R.D. 469, 485 (S.D. Cal. 2012); *Jackson v.
25   Farmers Ins. Exch.*, No. 2:14-cv-00250-WBS-AC, 2014 WL 7150264, at *6 (E.D. Cal.
26   Dec. 15, 2014) ("Plaintiffs' vague response that they made a 'good faith and
27   reasonable' inquiry fails to describe their search in a way that enables the court to
28   determine whether or not it was reasonable."); *see also In re Rivera*, No. CV 16-4676,
   2017 WL 5163695, at *3 (C.D. Cal. Apr. 14, 2017) ("A proper written response should

also provide sufficient information for the requesting party, and the court, to be satisfied that the responding party conducted an adequate investigation for responsive materials.").

While Defendants have stated that they have produced all relevant documents and information related to these data points, the February 24, 2021 deposition testimony of Hesperia's City Manager Nils Bentsen demonstrates that the responses are materially incomplete. While serving as a Sheriff's Department Captain overseeing the Sheriff's Department's Hesperia Station, Mr. Bentsen presented a PowerPoint (produced by Defendants on June 26, 2020) to the City Council, providing three data points purportedly linking crime to rental properties that justified the Program: calls for service, homicides, and multiple response forms (i.e., a form issued to individuals who are the subject of repeated police calls that can lead to administrative penalties). Nickell Decl. ¶14; *see also id.* Ex. 24 (copy of PowerPoint presentation). Mr. Bentsen testified that there were approximately four individuals from a "crime analysis" office within the Sheriff's Department who helped prepare the data. *Id.* ¶15; *id.* Ex. 25 (excerpts from deposition transcript). Mr. Bentsen testified that he could not recall their names, but that any of the "clerical staff" working at that time could have been involved. *Id.* ¶15; *id.* Ex. 25.

However, Defendants failed to disclose any "crime analysis" personnel or any other individual who assisted with preparing the data supporting the Crime Free Ordinance in response to Interrogatory No. 4, which plainly asks for the identity of such individuals. Further, Defendants failed to produce any documents showing data, summary, or analysis related to the three data points that Mr. Bentsen used to support the enactment of the Crime Free Ordinance, beyond three Excel files that appear to have been scrubbed of their formulas. Images of the content in these Excel files are below:

| | A | B | C | D |
|---|---|---|---|---|
| 1 | | Total CFS | | |
| 2 | All Other | 66.60% | | |
| 3 | At Rentals | 33.30% | | |
| 4 | | | | |
| 5 | | | | |
| 6 | | | | |

| | A | B | C | D |
|---|---|---|---|---|
| 1 | | Other | Rentals | Column |
| 2 | Other 1 | 1 | | |
| 3 | Rental Property 9 | 9 | | |
| 4 | | | | |
| 5 | | | | |

| | A | B | C | D |
|---|---|---|---|---|
| 1 | | Column2 | Column3 | Column1 |
| 2 | Rentals 80% | 80% | | |
| 3 | All Others 20% | 20% | | |
| 4 | | | | |

*Id.* ¶16. It defies logic that at least four people were involved in preparing these data points—including at least one of which was based on statistical sampling, and two rounded from their actual numbers, according to Mr. Bentsen's testimony—and no documents exist regarding this data analysis or conclusions beyond three Excel files including nothing but a few cells containing the ultimate, conclusory counts or percentages. Thus, in addition to ordering Defendants to search for and produce all requested documents and information, the Court should require Defendants to describe with specificity their searches. This would enable the Court and the United States to ascertain whether the searches were conducted with due diligence, particularly in light of deposition testimony indicating they were materially incomplete.

       **b.**    **Defendants' Boilerplate Objections are Legally Insufficient.**

Defendants' June 26, 2020 responses to the United States' April 23, 2020 requests for production—and their supplemental responses provided on November 13, 2020 (the City) and December 11, 2020 (the County and Sheriff's Department)—include boilerplate objections in response to every request for production. Nickell Decl. Exs. 9–1310. Defendants refused to withdraw these objections despite the Federal Rules' clear instructions and the United States' raising these deficiencies in Local Rule 37-1 deficiency letters and multiple meet-and-confer calls. *See id.* ¶12; *id.* Exs. 20–23 (letters); *see also* Fed. R. Civ. P. 33(b)(4) ("[t]he grounds for objecting to an

interrogatory must be stated with specificity"); Fed. R. Civ. P. 34(b)(2)(B) (requiring a responding party to "state with specificity the grounds for objecting to the request, including the reasons").

Defendants' repeated and persistent use of such unsupported boilerplate objections is improper. *See U.S. ex rel. O'Connell v. Chapman Univ.*, 245 F.R.D. 646, 649 (C.D. Cal. 2007) ("objections [that] are general or boilerplate objections . . . are not proper objections"); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) (stating that "general or boilerplate objections"—including "broad relevancy objections, objections of 'overly burdensome and harassing,' 'assumes facts not in evidence,' privacy, and attorney-client privilege/work product protection"—"are improper—especially when a party fails to submit any evidentiary declarations supporting such objections"); *cf. Travelers Indem. Co. v. Goldman*, No. 819CV01036PSGJDEX, 2020 WL 5372108, at *4 (C.D. Cal. May 8, 2020) (overruling boilerplate objections that were not specifically supported in discovery responses, and finding the failure to support them "suggest[ed] that those objections may not have been asserted for a proper purpose, but were instead interposed to delay").

Besides being boilerplate and unsupported, Defendants' objections to these requests are also inapposite. The County[2] (but not the City) objected to RFP 34, asserting it was "not reasonably calculated to lead to admissible evidence." This is not the current standard. As amended in 2015, Federal Rule of Civil Procedure 26 states that the parties "may obtain discovery regarding any nonprivileged matter that is **relevant to any party's claim or defense and proportional to the needs of the case**," and explicitly states that "[i]nformation within this scope of discovery **need not be admissible** in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1) (emphasis added). Accordingly, Defendants' boilerplate objection—which refers to a standard that was replaced in

---

[2] As a general matter, the Sheriff's Department's responses, including objections, incorporate the County's. Therefore, although the Sheriff's Department did not specifically make this objection or others, the United States assumes that its objections are the same as the County's unless noted otherwise.

2015—is outdated and improper. *See* Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment; *Smith v. Premiere Valet Servs., Inc.*, No. 2:19-cv-09888-CJC-MAA, 2020 WL 7034346, at *9 (C.D. Cal. Aug. 4, 2020) ("[T]hat is not the standard in federal court.").

Defendants also objected that the information sought by RFP No. 34 was "overbroad and disproportionate" to the needs of the case. However, Defendants have nowhere provided any support for these objections either; that, too, is insufficient and improper. *See* Fed. R. Civ. P. 34(b)(2)(B) (requiring that objections must "state with specificity the grounds for objecting to the request, including the reasons"); Fed. R. Civ. P. 26(b); Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment ("Nor is the [2015] change [to the Rule] intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional."); *see also Polaris Innovations Ltd. v. Kingston Tech. Co., Inc.*, No. CV-16-300, 2017 WL 3275615, at *6–7 (C.D. Cal. Feb. 14, 2017) ("[Defendant's] assertion of undue burden and lack of proportionality, without more, are insufficient under FRCP 26.").

Regardless, the information sought by RFP No. 34 is plainly relevant and proportionate to the needs of this case and is not overbroad. RFP No. 34 seeks the "data, information, and analyses, relating to Nils Bentsen's recommendation that the City adopt a crime free rental housing program, including analyses and reports created to assess the need for the crime free rental housing program, the data and documents used to generate such analyses and reports, notes and workpapers (including drafts and markups), and communications about the recommendation and its basis." The requested information is plainly relevant to Defendants' purported crime-reduction rationale for the Program, and critical to assess whether it was pretextual. Therefore, the requested information is relevant to the defense that the Program served a legitimate purpose and to Defendants' intent in enacting the Program.

As to the unexplained claim of overbreadth, RFP No. 34 goes no farther than seeking information related to Mr. Bentsen's recommendation for adoption of the

Program. Material issues in this Fair Housing Act and Title VI case are whether Defendants enacted and enforced that Program with discriminatory intent or based on a pretextual crime reduction rationale. Thus, the request is not overbroad. And as noted above, Defendants offer no facts supporting a claim that any burden or expense of producing such materially relevant information outweighs its likely benefit to the case, and thus lacks proportionality to the needs of the case. *See* Fed. R. Civ. P. 26(b). Therefore, Defendants' objections based on overbreadth and proportionality fail.

Defendants also objected to several of the requests on the grounds that they purportedly "lack[] foundation and assume[] disputed facts," including RFP No. 30 (the County), 34 (the City and County), and Interrogatory No. 4 (the City and Sheriff's Department). The City and Sheriff's Department also objected to Interrogatory No. 4 on the grounds that the phrase "relating to your decision to develop the crime free rental housing program and enact the 2015 Ordinance" was purportedly "vague and ambiguous." However, Defendants have provided no information to support these objections. Defendants are required to construe the discovery requests reasonably and cannot "conjure up ambiguity where there is none." *Gibson Brands Inc. v. John Hornby Skewes & Co.*, Case No. CV 14-0609 DDP (SS), 2015 WL 12681376, at *2 (C.D. Cal. July 20, 2015) (internal quotations omitted); *see also Heller v. City of Dallas*, 303 F.R.D. 466, 488 (N.D. Tex. 2014) ("the responding party, to comply with the Federal Rules, must, if possible, explain its understanding of the allegedly vague and ambiguous terms or phrases and explicitly state that its answer is based on that understanding").

Considering each request individually: RFP No. 30 does not assume any facts. It simply seeks documents relating to the design and enactment of the ordinance that gave rise to the Program in 2015. The same is true for RFP No. 34, which seeks data related to Mr. Bentsen's recommendation that the City adopt the Program. Interrogatory No. 4 likewise seeks information about the data and sources considered and the persons involved in adopting the Program. Therefore, none of these requests lacks foundation or assumes facts. Furthermore, there is nothing unclear or ambiguous about the phrase

1    "relating to your decision to develop the crime free rental housing program and enact the

2    2015 Ordinance" from Interrogatory No. 4. The meaning is clear: the United States seeks

3    the data and information Defendants drew on when deciding to adopt the Program.

4    Defendants thus have not detailed how these discovery requests lack foundation or are

5    vague and ambiguous; such conclusory objections are not sufficiently specific to

6    demonstrate why the requests are objectionable. *See* Fed. R. Civ. P. 33(b)(4) ("The

7    grounds for objecting to an interrogatory must be stated with specificity."); Fed. R. Civ.

8    P. 34(b)(2)(B) (stating response must "state with specificity the grounds for objecting to

9    the request, including the reasons"); *Garber,* 234 F.R.D. at 188 (noting that general or

10   boilerplate objections must be supported); *Ramirez v. County of Los Angeles*, 231 F.R.D.

11   407, 409 (C.D. Cal. 2005) (rejecting boilerplate objections as "too general to merit

12   consideration" and deeming them waived).

13          Furthermore, Defendants object that RFP Nos. 30 and 34 and Interrogatory No. 4

14   are all compound. Defendants provided no support for this boilerplate objection for any

15   of these three requests, nor for asserting that "compound" is an appropriate basis for the

16   two requests for production. There is no limit on the number of requests for production a

17   party can promulgate, and Defendants have not shown that any part of RFP Nos. 30 or

18   34 would be cumulative or duplicative by reference to documents already produced or

19   searches already performed, so the objection does not withstand scrutiny.

20          Interrogatory No. 4 is also not compound because it does not contain multiple,

21   discrete subparts. It simply seeks the facts relating to the decision to develop the

22   Program, including the data, information, and sources consulted in making the decision,

23   the persons involved in gathering or analyzing them, and the persons who made the

24   decision. By describing the types of facts the interrogatory seeks, the interrogatory

25   provides illustrative examples to clarify the scope of the request or specify the type of

26   information requested. Therefore, this descriptive information is "logically or factually

27   subsumed within and necessarily related to the primary question" and so "counted as one

28   interrogatory" and not compound. *MCC Controls v. Hal Hays Constr.*, No.

EDCV191655ABKKX, 2020 WL 6034321, at *4 (C.D. Cal. July 23, 2020) (quoting *Trevino v. ACB Am., Inc.*, 232 F.R.D. 612, 614 (N.D. Cal. 2006)); *see also Stamps.Com, Inc. v. Endicia*, *Inc., PSI Sys. Inc.*, No. CV 06-7499ODWCTX, 2009 WL 2576371, at *3 (C.D. Cal. May 21, 2009) (finding that "requests for facts, persons with knowledge of those facts and documents containing those facts should be considered one interrogatory because they are subsumed within the primary question of facts supporting" particular contentions by a party).

Because Defendants' unsupported boilerplate objections to RFP Nos. 30 and 34 and Interrogatory No. 4 all fail, they cannot be used to shield responsive information from disclosure.

### c.    Defendants' Boilerplate Claims of Privilege are Unsupported and Inapposite.

Defendants asserted boilerplate, unsupported claims of attorney-client, work product, and deliberative process privilege as objections to RFP Nos. 30 and 34 and Interrogatory No. 4.

First, the information sought by each of the three requests is not protected by the attorney-client privilege or work product doctrine. Courts construe the attorney-client privilege narrowly to protect only communications between attorneys and their clients made in confidence for the purpose of obtaining legal advice. *See In re Pac. Pictures Corp.*, 679 F.3d 1121, 1126 (9th Cir. 2012); *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009). With respect to Interrogatory No. 4, which specifically requests facts, there is no reason the privileges would shield from discovery the *facts*, including data, that Defendants considered during the process of developing and enacting the Program. An interrogatory's request for facts does not implicate communications to and from attorneys made in confidence for the purpose of obtaining legal advice, as is required for the attorney-client privilege. Nor would the privilege shield any document other than a confidential communication between attorney and client meeting the above definition. But Defendants have offered no explanation beyond a boilerplate assertion of the

privilege to explain why the documents and information sought in these requests fall within the privilege. Because Defendants have failed to provide a sufficient basis to claim the attorney-client privilege as to any document or information sought in RFP Nos. 30 and 34 and Interrogatory No. 4, the Court should compel Defendants to produce them.

Similarly, the work-product doctrine would not apply here because documents and information responsive to these requests—i.e. data, sources of information, and facts predating the enactment of the Program in November 2015—would not have been prepared in anticipation of litigation. *See* Fed. R. Civ. P. 26(b)(3); *In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004) (holding that, "to qualify for protection against discovery under [Rule 26(b)(3)], documents must have two characteristics: (1) they must be prepared in anticipation of litigation or for trial, and (2) they must be prepared 'by or for another party or by or for that other party's representative.") (citing *In re Cal. Pub. Utils. Comm'n*, 892 F.2d 778, 780–81 (9th Cir. 1989) (internal quotations omitted)). As with the attorney-client privilege, Defendants merely claim a boilerplate work product privilege without attempting to describe how the documents and information meet these elements. As noted, the documents and information the United States seeks could not have been prepared in anticipation of litigation or trial. Thus, Defendants' work product privilege claims fail and the Court should compel the requested production.

Defendants also object to all three requests based on the deliberative process privilege yet fail to offer a basis to support it or show that it applies. For the deliberative process privilege to apply, Defendants must show as a threshold matter that the documents in question are pre-decisional and deliberative. *See Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988). Defendants have failed to offer any support for either element for the items they listed on their privilege log as protected by the deliberative process privilege. Nickell Decl. ¶23; *id.* Exs. 28–30 (currently operative privilege logs). Thus, their attempt to claim the privilege fails.

1    But even if they had met their initial burden, they could not invoke the privilege to

2  shield information responsive to these requests. For the deliberative process privilege to

3  apply, Defendants must show that the disclosure would not only hamper the deliberative

4  process, but also that the public interest in nondisclosure clearly outweighs the public

5  interest in disclosure. *See Citizens for Open Gov't v. City of Lodi*, 205 Cal. App. 4th 296,

6  306–07 (2012) (noting that the burden is on the entity claiming the privilege to make this

7  comparative showing, and finding that general assertion that disclosure would hamper

8  candid dialogue is insufficient); *see also Golden Door Props., LLC v. Superior Ct. of

9  San Diego Cty*., 52 Cal. App. 5th 837 (2020), *as modified on denial of reh'g* (Aug. 25,

10  2020) (finding that public agency's general invocation of a "chilling effect" on "back

11  and forth exchanges" between consultants and staff was inadequate where the agency

12  failed to provide specific explanations for the 1,900 documents at issue).

13    Furthermore, where the deliberative process itself is at issue—as it is here, where

14  the United States has alleged the Program was enacted with discriminatory intent—then

15  the public interest weighs in favor of disclosure. *See Gray v. Bd. of Higher Educ*., 692

16  F.2d 901, 906 (2d Cir. 1982); *Singer Sewing Mach. Co. v. NLRB*, 329 F.2d 200, 208 (4th

17  Cir. 1964); *Dominion Cogen, D.C., Inc. v. District of Columbia*, 878 F. Supp. 258, 268

18  (D.D.C. 1995); *Dep't of Econ. Dev. v. Arthur Andersen & Co*., 139 F.R.D. 295, 299

19  (S.D.N.Y. 1991); *United States v. AT&T*, 524 F. Supp. 1381, 1386 n.14 (D.D.C. 1981);

20  *United States v. Proctor & Gamble* Co., 25 F.R.D. 485, 490 (D.N.J. 1960).

21    And even if the privilege applied, it would be qualified and would yield to factors

22  weighing in favor of disclosure. *See F.T.C. v. Warner Comm'ns Inc.*, 742 F.2d 1156,

23  1161 (9th Cir. 1984) (setting forth for factors assessed to determine if the deliberative

24  process privilege is overcome: "1) the relevance of the evidence; 2) the availability of

25  other evidence; 3) the government's role in the litigation; and 4) the extent to which

26  disclosure would hinder frank and independent discussion regarding complicated

27  policies and decisions.").

28    The information requested is plainly relevant because it concerns Defendants'

intent and rationale for adopting the Program. *See id.; see also Valley Surgical Ctr. v. County of Los Angeles*, No. CV132265DDPAGRX, 2017 WL 10574239, at *4 (C.D. Cal. Sept. 22, 2017) (finding disclosure is favored if evidence of intent or motive is relevant and unavailable elsewhere), *appeal filed*, No. 20-55744 (9th Cir. July 23, 2020). Such information concerning Defendants' intent is extremely unlikely to be available elsewhere, *see Valley Surgical Ctr.*, No. CV132265DDPAGRX, 2017 WL 10574239, at *4, which weighs in favor of disclosure.

In addition, disclosure is favored because the City—which enacted the Program— is a municipal entity whose deliberations are at issue in this action. *See id.* (disclosure favored if the relevant deliberations were by "a party to the litigation, [this] weighs in favor of disclosure"). Any concerns Defendants might have about potential chilling effects are negated by the power of public scrutiny to encourage rather than discourage honest internal communications. *See id.*

And because this is a civil rights action, the Defendants' interest in shielding communications carries less weight here than the interest in public scrutiny. *See N. Pacifica, LLC*, 274 F. Supp. 2d at 1123 ("'privileges designed to shield [municipalities] from public scrutiny must yield to the overriding public policies expressed in the civil rights laws.'" (quoting *Grossman v. Schwarz*, 125 F.R.D. 376, 381 (S.D.N.Y. 1989))); *cf. Noble v. City of Fresno*, No. 116CV01690DADBAM, 2018 WL 1381945, at *7 (E.D. Cal. Mar. 19, 2018) (holding the "deliberative process privilege is inappropriate for use in civil rights cases against police departments") (internal quotations omitted); *see also Dominion Cogen, D.C., Inc.*, 878 F. Supp. at 268; *Arthur Andersen & Co.*, 139 F.R.D. at 299; *AT&T*, 524 F. Supp. at 1386 n.14; *Proctor & Gamble Co.*, 25 F.R.D. at 490–91 ; *cf. Rutherford v. PaloVerde Health Care Dist.*, No. EDCV131247JAKSPX, 2014 WL 12637191, at *4 (C.D. Cal. Oct. 28, 2014) (discussions that occur during closed sessions of decision-making bodies are not automatically protected).

Since the *Warner Communications Inc*. factors plainly favor disclosure, Defendants cannot use the privilege to shield responsive information about their conduct

that forms the basis for the claims and defenses in this case, especially since they have provided no specific basis for doing so. Therefore, disclosure is plainly favored here and the Court should compel Defendants to produce the requested documents and information.

Defendants also invoke the joint defense privilege as an objection to RFP No. 34, once again without support. Such use of the joint defense privilege is also inappropriate. The joint defense privilege applies only to communications made as part of a joint defense effort, and only if they are designed to further the effort and the privilege has not been waived. *See Bryant v. Mattel, Inc.*, 573 F. Supp. 2d 1254, 1275 (C.D. Cal. 2007). The information sought by this request concerns the creation of the Program, which was at least six months before the HUD investigation began and years before this case was filed. Therefore, at that time, there was no joint *defense* effort that the City and Sheriff's Department were then undertaking that would trigger the joint defense privilege.

Finally, Defendants assert that the documents sought by RFP Nos. 30 and 34 are protected by purported "constitutional rights to privacy afforded by the United States and California Constitutions." This assertion—which is completely unsupported by any facts—fails just like the others. The Stipulated Protective Order in this case specifically provides for the protection of confidential or sensitive information. *See* Nickell Decl. ¶26; *id.* Ex. 31, ECF No. 23; *Curtin*, No. SA-CV-16591, 2017 WL 5593025, at *5 (C.D. Cal. Mar. 13, 2017) ("[T]he protective order previously issued in this case strikes the appropriate balance between the need for the information and the privacy interests of defendant or third parties. Defendant's objections based on privacy concerns are overruled."); *Ragge v. MCA/Universal Studios*, 165 F.R.D. 601, 604 (C.D. Cal. 1995) (ordering defendants to produce responsive documents containing sensitive or personal information using the procedures set out in the protective order entered in the case). Therefore, to the extent Defendants have concerns about the sensitivity of information in certain documents, they should produce them in accordance with the parties' Stipulated

1  Protective Order rather than withhold them on purported privilege grounds.[3]

2  Even if there were no Stipulated Protective Order, under federal law, privacy

3  interests "must be evaluated against the backdrop of the strong public interest in

4  uncovering civil rights violations." *Keith H.*, 228 F.R.D. at 657 (quoting *Soto v. City of*

5  *Concord*, 162 F.R.D. 603, 617 (N.D. Cal. 1995). In balancing these interests, "great

6  weight . . . is afforded to federal civil rights laws." *Soto*, 162 F.R.D. at 617.

7  In sum, Defendants appear likely (based upon the testimony of the City Manager,

8  who used to be the Sheriff's Department captain at the Sheriff's Hesperia station) to

9  have additional, non-privileged information responsive to the United States' legitimate

10  discovery requests concerning the design and enactment of the Program. Thus, the Court

11  should compel them to provide it. Specifically, the Court  should compel Defendants to

12  produce the identities of all staff who assisted with the analysis and preparation of the

13  data points Mr. Bentsen presented to the City Council, as well as all notes,

14  correspondence, data analyses, reports, and other similar documents created or reviewed

15  by such individuals in connection with these data points. In addition to producing the

16  responsive information, the Court should require Defendants to describe with specificity

17  the steps taken to search for responsive documents and information, so that the Court

18  may assess the thoroughness of those searches.

19

20  _____

[3] This purported privilege appears in neither the City's nor the County's privilege logs.
21  But even if it had appeared in the logs, it would have been inapposite. To the extent the
privilege relies on the California Constitution, the objection fails because federal law
22  controls in this case. *See Curtin v. County of Orange*, No. SA-CV-16591, 2017 WL
5593025, at *2 (C.D. Cal. Mar. 13, 2017) ("for a federal civil rights case, federal law
23  controls the issues of privilege and privacy rights"); *Keith H. v. Long Beach Unified Sch.*
*Dist.*, 228 F.R.D. 652, 657 (C.D. Cal. 2005) ("[D]efendants primarily object to plaintiff's
24  document requests by claiming third party privacy rights under the California
Constitution, California statutes and California law. However, such reliance is misplaced
25  since plaintiff's claims are under federal law and, as discussed above, federal common
law privileges apply."). Therefore, the citation to the California state constitution is
26  inapposite. Defendants' only other citation—to *Griswold v. State of Connecticut* (1965)
381 U.S. 479, 484—is likewise inapplicable. The United States does not dispute the
27  existence of privacy rights. Rather, its position is that any such privacy interests are
adequately secured here by the Stipulated Protective Order and must be considered in
28  light of the public interest in disclosure in civil rights matters, as discussed below.

### 3.   Defendants' Position

#### a.   Request for Production No. 30

The USA's RFP No. 30 seeks documents "**relating to the design and enactment of the 2015 Ordinance**" to which Defendants have produced all responsive documents (this RFP was separately propounded on all Defendants). As the enacting agency, Defendant, City of Hesperia agreed to produce "copies of all non-privileged responsive documents in its possession." **There is no mention or definition of "Crime-Related Data Points" for this particular request**. In response to RFP No. 30 the following documents have already been produced as part of Defendants' joint **initial disclosures which consisted of 1,591 documents**. Particularly, Defendants produced DEF000639-00647, DEF00677-00684, DEF000711-713, DEF000778-785, DEF000857-00881, DEF01449-1460, DEF01542-001591.  These records will be attached to the La Decl. This production includes staff reports created by Nils Bentsen related to the adoption of the Crime Free Rental Housing Ordinance, draft and final minutes for Hesperia city council meetings in which the ordinance was discussed, materials (e.g. PowerPoint presentations) presented during the council meetings. Defendants have also produced all City Council items and video recordings of the City Council meetings, and third party correspondence received related to the City's enactment of the program (e.g. CITY00001-43; CITY000266-324;  Defendants have also produced all known email communications responsive to this request. For example, emails and communications related to or even merely mentioning the crime free program have already been produced or were otherwise already part of HUD's document production to Plaintiff and within Plaintiff's possession. This includes early communications related to the enactment of the program (e.g. DEF00933-934; DEF00976-1007).

#### b.   Request for Production No. 34

Similarly, RFP No. 34 as propounded on all Defendants seeks "[a]ll documents, including data, information, and analyses, relating to Nils Bentsen's recommendation that the City adopt a crime free rental housing program, the data and documents used to

generate such analyses and reports, notes and workpapers (including drafts and markups), and communications about the recommendation and its basis.

Again, despite objections so as not to constitute a waiver, Defendants have produced all known non-privileged materials within their possession or control responsive to this request. This includes all documents produced in response to RFP No. 30 as well as emails from Nils Bentsen and staff reports which include data, information and analyses. For example, a produced staff report dated September 16, 2014 includes analyses that out of 1050 properties that have received disturbance response, 530 were rentals and of the 530, 114 have more than one response. Defendants have also produced all PowerPoint presentations that also include data, information and analyses. **It should be noted that in response to other RFPs, Defendants have also produced data related to arrests, various crimes from 2014-2019 as well as the Sheriff's annual crime reports, 2017-2019 homicide detail statistical comparison, workload statistics from 2009-2019 related to call volume, dispatched, bookings etc. Therefore, Plaintiff's contention that Defendants failed to produce any documents showing data, summary, or analysis is simply not true and it is unclear what additional data points Plaintiff seeks, hence giving credit to Defendants' objection that the request may be too broadly construed**. To the extent that additional data exists in light of Mr. Bentsen's  deposition testimony, **USA has failed to meet and confer with Defendants related to what specific additional documentation they seek or believe has been withheld.  For example, Plaintiff seeks additional information related to the content of excel files identified above, however, Defendants have not been made aware of such specific issues prior to this Joint Stipulation.** The USA's unsupported allegation that Defendants have scrubbed the excel documents of their contents is also unfounded and without merit.

### c.     Interrogatories No. 4

The USA's request that Defendants be compelled to produce the identity of staff that Mr. Bentsen mentioned during his deposition is premature. Defendants are not

refusing to provide this information and were not aware of this issue until well after Mr. Bentsen's deposition per an email communication of Matthew Nickell on April 7, 2021.

The USA asked the City to "state all facts relating to your decision to develop the crime free rental housing program and enact the 2015 Ordinance, including but not limited to identifying all data, information, and sources compiled, analyzed, and considered in making that decision, all persons involved in identifying and compiling data or information or performing the analyses to that decision, and all persons responsible for making that decision."  This is one of the many examples of the USA's compound and overbroad discovery requests.  In any event, the City responded in full and provided the information sought in this interrogatory.  Again, prior to Mr. Bentsen's deposition, the USA did not meet and confer with respect to this issue. Defendants are not refusing to provide this information to the extent that it exists, despite the fact that this matter was never properly met and conferred on consistent with FRCP 37.

Plaintiff also asked the Sheriff's Department to "state all facts relating to your suggestion or recommendation that the City of Hesperia develop the crime free rental housing program and enact the 2015 Ordinance, including but not limited to identifying all data, information, and sources compiled, analyzed." The Sheriff's Department responded with information known to it and further referred Plaintiff to multiple documents as permitted by FRCP 33(d).

### d.   Defendants objections are not boilerplate.

As set forth in the La Decl. and the attached email communications, the parties met and conferred about both parties' objections and the preservation of objections. Defendants pointed out that the objections asserted are not boilerplate and were asserted so as to avoid any waiver pursuant to Rule 33(b)(4) – just as the USA did in its responses. During the meet and confer, the USA indicated that their concern was an assurance that Defendants were not withholding documents based on the objections. In good faith, Defendants agreed to go through each of the disputed discovery items and respond whether any documents were being withheld.  Defendants did not withhold any

1  documents, other than those in the privilege log, which was communicated to the USA.
2  There was no further communication from the USA with regard to this issue until this
3  Stipulation. The USA's use of the "boilerplate objections" as justification for the motion
4  to compel is without merit.

5  In any event, there was no withholding of discovery despite the objections –
6  which were necessary given the USA's broad propounded discovery.  That includes
7  objections based on "[t]he attorney-client privilege protects confidential disclosures
8  made by a client to an attorney in order to obtain legal advice, ... as well as an attorney's
9  advice in response to such disclosures. [citations]"  *United States v. Ruehle*, 583 F.3d
10 600, 607 (9th Cir. 2009); *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). This
11 includes privileges asserted on deliberative process which protects documents that are
12 "predecisional" or "antecedent to the adoption of agency policy." *Nat'l Wildlife Fed'n v.*
13 *U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988).

14 The only documents that were withheld have been identified in the City of
15 Hesperia's produced privilege logs. **The County and Sheriff's Department have not**
16 **located nor withheld documents responsive to any of the aforementioned  requests**
17 **based on any privilege**. Further, all staff reports (even drafts) have been produced. As
18 Defendants explained to the USA, the objections as phrased were asserted in an
19 abundance of caution to protect against any inadvertent waiver of the same should
20 additional documents be later identified: e.g. "**insofar** as the Interrogatory seeks
21 information protected by the attorney-client privilege" and "**insofar** as the Request seeks
22 documents protected by the attorney-client privilege and/or work-product privilege, the
23 records are privileged."

24 Given the USA's overbroad and compound discovery requests, in addition to the
25 amount of documents in this case, Defendants could not waive their objections and
26 privileges.  The USA falsely accuses Defendants of withholding responsive information
27 and documents based on Defendants' objections.

28

###### e.     Defendants are not required to describe their search.

The USA's contention that Defendants are required to describe their search lacks merit and misstates FRCP 34 and applicable case law – and shows the USA's general self-serving belief that it is entitled to more than normal litigants. **The case law cited by the USA only applies to situations in which no documents have been produced, which is not the case here**: ("[i]n responding to discovery requests, a reasonable inquiry must be made, and if no responsive documents or tangible things exist, the responding party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence." *In re Rivera*, No. CV 16-4676 JAK (SSX), 2017 WL 5163695, at *3 (C.D. Cal. Apr. 14, 2017), *Jackson v. Farmers Ins. Exch.*, No. 2:14-CV-00250-WBS-AC, 2014 WL 7150264, at *6 (E.D. Cal. Dec. 15, 2014) ("[i]f no responsive documents or tangible things exist, the responding party must describe its search with sufficient specificity to allow the court to determine whether the party made a reasonable inquiry and exercised due diligence.")

**B.     The County and Sheriff's Department Have Failed to Provide Relevant Police Activity and Residential Property Data, and Information about the Systems in Which Such Data Is Stored**

**United States' Position**

The United States' April 23, 2020 requests for production sought several categories of police activity and residential property data relating to the incidence and location of various categories of criminal activity in Hesperia, including at residential rental properties and other locations. Specifically, the requests seek information about police activity and residential property data in the possession, custody, or control of the Sheriff's Department and/or the County, including calls for service (RFP No. 11), citations and summonses (RFP No. 12), arrest and incident reports (RFP No. 13), homicide records (RFP No. 14), documents reflecting whether residential properties are owner-occupied or rentals (RFP No. 15), and documents tracking alleged criminal activity, nuisances, calls for service, and other Sheriff's Department activity by property

address (RFP No. 16). *See* Nickell Decl. ¶6; *id.* Exs. 6–8 (RFP Nos. 11–16). Defendants provided supplemental responses in November (the City) and December (the County and Sheriff's Department), and additional responsive documents between November and February (the County and Sheriff's Department) and in April (the City). *Id.* ¶8; *id.* Exs. 12–13.

### Defendants' Position

The County and Sheriff's Department (collectively "County") have produced all data sheets created in connection with the Crime Free Program that includes the identification of rental properties, their addresses, documents related to calls for service at rental properties, documentation used to track criminal activity at rental property, as well as statistical information related to arrests and homicides.

The USA unreasonably seeks production of entire databases that the County accesses containing any information related to criminal activity and arrests in the City of Hesperia, and/or a compilation, creation, or extraction of documents to reflect the multiple data points that the USA seeks related to each request. These overbroad and vague requests are extremely burdensome and require not only discovery outside of Defendants' control, *e.g.,* database information controlled by the state of California and not the County or the City of Hesperia, but the unauthorized disclosure of arrestee information prohibited by California law. Article I, section 1 of the California Constitution establishes the right of privacy, which protects arrestees from unauthorized disclosure of their criminal history and California courts have repeatedly recognized that release of arrest records or dissemination of information about arrests implicates the right to privacy of the arrestees. See *Kilgore v. Younger* 30 Cal.3d 770, 794 (1982); *Loder v. Municipal Court*, 17 Cal.3d 859, 864 (1976); *Hooper v. Deukmejian* (1981) 122 Cal.App.3d 987, 1015. (1981).

Furthermore, the USA's requests are impermissibly overbroad, burdensome and **seeks the creation of documents that do not exist**. Notwithstanding, Defendants have exchanged in excess of 35,000 documents (not including the initial set of documents

turned over to HUD as part of the initial investigation), yet the USA is unreasonably convinced that Defendants are hiding the "smoking gun" based on privilege. Again, as set forth in the email communications between the parties and as stated in the La Decl., Defendants are not withholding any non-privileged responsive documents  with respect to the Crime Free Ordinance.  The USA is not entitled to – and no justification has been proffered – compelling Defendants to provide information that is subject to law enforcement privilege or third party right to privilege.

### 1.      Applicable Discovery Requests and Responses

#### a.      RFP No. 11 to the County

Documents and data showing calls for service by the Sheriff at locations in Hesperia including information about the race of the individual(s) involved, the property address, and the parcel number, separately producing or identifying calls for service at (a) residential owner-occupied properties, (b) residential rental properties, (c) nonresidential properties, and (d) no specific property address (e.g., roadways).

#### b.      The County's June 26, 2020 Response to RFP No. 11

The General Objections are hereby incorporated by reference as if set forth in full herein. Responding Party objects to the extent that this request is overbroad and unduly burdensome as it seeks all calls received by the Sheriff's Department for an unlimited time period rendering this request beyond the scope and limit of Rule 26(b) and disproportionate to the needs of this case. This request also seeks a compilation of specific data which is not kept within Responding Party's usual course of business. This request may also require the production of documents that violate a third party's constitutional rights to privacy afforded by the United States and California Constitutions (Cal. Const. Art. 1, § 1; *Griswold v. State of Connecticut* (1965) 381 U.S. 479, 484 [right to privacy is guaranteed by the U.S. Constitution]. This overbroad request also seeks documents subject to the official information privilege, law enforcement privilege, and documentation subject to investigatory files privilege, and official confidential information subject to public interest privileges.

Subject to and without waiving the foregoing objections and pursuant to the scope set forth in Rule 26(b), Responding Party responds as follows: Responding Party will produce copies of documents responsive to this request, but cannot fully comply with such an overbroad and burdensome request. Responding Party reserves the right to supplement its production pursuant to Rule 26(e).

### c. The County's Dec. 11, 2020 Supplemental Response to RFP No. 11[4]

Objection. Responding Party objects on the grounds that: (a) the Request seeks documents that are not reasonably calculated to lead to admissible evidence; (b) the Request is compound; (c) the Request is overbroad and disproportionate violating FRCP 26(b)(1); (d) the Request lacks foundation and assumes disputed facts; (e) insofar as the Request seeks documents protected by the attorney-client privilege and/or the work-product privilege, the records are privileged; and (f) insofar as the discovery violates third parties' constitutional rights to privacy afforded by the United States and California Constitutions, the records are privileged.

Subject to and without waiving the foregoing objection, Responding Party responds as follows: Defendant hereby supplements its production and produces all non-privileged responsive documents in its possession, custody, or control bates stamped COUNTY013302-COUNTY013383 and COUNTY013388-COUNTY013389. Defendant also produces several folders contained in physical file cabinets at the Hesperia Police Station, per the parties' meet and confer, which are bates stamped COUNTY013390-COUNTY013394.

### d. RFP No. 11 to the Sheriff's Department

Documents and data showing calls for service by the Sheriff at locations in Hesperia including information about the race of the individual(s) involved, the property address, and the parcel number, separately producing or identifying calls for service at

---

[4] The County incorrectly referred to this Request as Request No. 10 in its Supplemental Responses.

(a) residential owner-occupied properties, (b) residential rental properties, (c) nonresidential properties, and (d) no specific property address (e.g., roadways).

### e. The Sheriff's Department's June 26, 2020 Response to RFP No. 11

Because the Sheriff's Department and County of San Bernardino are essentially the same entity and the requests for production to each entity are identical, to avoid redundancy the Sheriff's Department refers Propounding Party to the County of San Bernardino's response to this request, which includes Sheriff Department-specific information, where appropriate.

### f. RFP No. 12 to the County

Citations or summonses issued by the Sheriff for criminal violations occurring in Hesperia and/or to residents of Hesperia including information about the race of the individual(s) involved, the property address, and the parcel number, separately producing or identifying those citations or summonses issued to a resident of or for a violation occurring at (a) residential owner-occupied properties, (b) residential rental properties, (c) non-residential properties, and (d) no specific property address (e.g., roadways).

### g. The County's June 26, 2020 Response to RFP No. 12

The General Objections are hereby incorporated by reference as if set forth in full herein. Responding Party objects to the extent that this request is overbroad and unduly burdensome as it seeks all citations and summons issued by the Sheriff's Department for an unlimited time period rendering this request beyond the scope and limit of Rule 26(b) and disproportionate to the needs of this case. This request also seeks a compilation of specific data which is not kept within Responding Party's usual course of business. This request may also require the production of documents that violate a third party's constitutional rights to privacy afforded by the United States and California Constitutions (Cal. Const. Art. 1, § 1; *Griswold v. State of Connecticut* (1965) 381 U.S. 479, 484 [right to privacy is guaranteed by the U.S. Constitution]. Responding Party lacks the resources to gather, obtain and provide at least 32 years of citations issued for

1   all and any criminal violations in Hesperia.

2       Subject to and without waiving the foregoing objections and pursuant to the scope

3   set forth in Rule 26(b), Responding Party responds as follows: Responding Party cannot

4   comply with such an overbroad and burdensome request. Responding Party reserves the

5   right to supplement its production pursuant to Rule 26(e).

6           **h.     The County's Dec. 11, 2020 Supplemental Response to RFP**

7           **No. 12[5]**

8       Objection. Responding Party objects on the grounds that: (a) the Request seeks

9   documents that are not reasonably calculated to lead to admissible evidence; (b) the

10  Request is compound; (c) the Request is overbroad and disproportionate violating FRCP

11  26(b)(1); (d) the Request lacks foundation and assumes disputed facts; (e) insofar as the

12  Request seeks documents protected by the attorney-client privilege and/or the work-

13  product privilege, the records are privileged; and (f) insofar as the discovery violates

14  third parties' constitutional rights to privacy afforded by the United States and California

15  Constitutions, the records are privileged.

16      Subject to and without waiving the foregoing objection, Responding Party

17  responds as follows: Defendant hereby supplements its production and produces all non-

18  privileged responsive documents in its possession, custody, or control bates stamped

19  COUNTY013302-COUNTY013383.

20          **i.     RFP No. 12 to the Sheriff's Department**

21      Citations or summonses issued by the Sheriff for criminal violations occurring in

22  Hesperia and/or to residents of Hesperia including information about the race of the

23  individual(s) involved, the property address, and the parcel number, separately producing

24  or identifying those citations or summonses issued to a resident of or for a violation

25  occurring at (a) residential owner-occupied properties, (b) residential rental properties,

26  (c) non-residential properties, and (d) no specific property address (e.g., roadways).

27  ─────────────────────
[5] The County incorrectly referred to this Request as Request No. 11 in its Supplemental
28  Responses.

1
2

> **j.     The Sheriff's Department's June 26, 2020 Response to RFP No. 12**

3   Because the Sheriff's Department and County of San Bernardino are essentially

4   the same entity and the requests for production to each entity are identical, to avoid

5   redundancy the Sheriff's Department refers Propounding Party to the County of San

6   Bernardino's response to this request, which includes Sheriff Department-specific

7   information, where appropriate.

8

> **k.     RFP No. 13 to the County**

9   Documents and data about arrests—including arrest reports, incident reports,

10  charging statements, probable cause affidavits, audio and video recordings, and other

11  arrest records—occurring in Hesperia and/or arrests of individuals then-residing in

12  Hesperia including information about the race of the individual(s) involved, the property

13  address, and the parcel number, separately producing or identifying those documents

14  relating to arrests occurring at or of individuals residing in (a) residential owner-

15  occupied properties, (b) residential rental properties, (c) non-residential properties, and

16  (d) no specific property address (e.g., roadways).

17

> **l.      The County's June 26, 2020 Response to RFP No. 13**

18  The General Objections are hereby incorporated by reference as if set forth in full

19  herein. Responding Party objects to the extent that this request is overbroad and unduly

20  burdensome as it seeks all documentation about arrests for an unlimited time period

21  rendering this voluminous request beyond the scope and limit of Rule 26(b) and

22  disproportionate to the needs of this case. This request also seeks a compilation of

23  specific data which is not kept within Responding Party's usual course of business. This

24  request may also require the production of documents that violate a third party's

25  constitutional rights to privacy afforded by the United States and California

26  Constitutions (Cal. Const. Art. 1, § 1; *Griswold v. State of Connecticut* (1965) 381 U.S.

27  479, 484 [right to privacy is guaranteed by the U.S. Constitution]. This overbroad

28  request also seeks documents subject to the official information privilege, law

enforcement privilege, and documentation subject to investigatory files privilege, and official confidential information subject to public interest privileges. Responding Party lacks the resources to gather, obtain and provide at least 32 years of arrest reports, incident reports, charging statements issued for arrests in Hesperia. Finally, Responding Party objects to the extent that this request seeks documents related to ongoing investigations, which can impair or compromise the investigation.

Subject to and without waiving the foregoing objections and pursuant to the scope set forth in Rule 26(b), Responding Party responds as follows: Responding Party cannot comply with such an overbroad and burdensome request. Responding Party reserves the right to supplement its production pursuant to Rule 26(e).

### m.   The County's Dec. 11, 2020 Supplemental Response to RFP No. 13[6]

Objection. Responding Party objects on the grounds that: (a) the Request seeks documents that are not reasonably calculated to lead to admissible evidence; (b) the Request is compound; (c) the Request is overbroad and disproportionate violating FRCP 26(b)(1); (d) the Request lacks foundation and assumes disputed facts; (e) insofar as the Request seeks documents protected by the attorney-client privilege and/or the work-product privilege, the records are privileged; and (f) insofar as the discovery violates third parties' constitutional rights to privacy afforded by the United States and California Constitutions, the records are privileged.

Subject to and without waiving the foregoing objection, Responding Party responds as follows: Defendant hereby supplements its production and produces all non-privileged responsive documents in its possession, custody, or control bates stamped COUNTY013302-COUNTY013383.

### n.   RFP No. 13 to the Sheriff's Department

Documents and data about arrests—including arrest reports, incident reports,

---

[6] The County incorrectly referred to this Request as Request No. 12 in its Supplemental Responses.

charging statements, probable cause affidavits, audio and video recordings, and other arrest records—occurring in Hesperia and/or arrests of individuals then-residing in Hesperia including information about the race of the individual(s) involved, the property address, and the parcel number, separately producing or identifying those documents relating to arrests occurring at or of individuals residing in (a) residential owner-occupied properties, (b) residential rental properties, (c) non-residential properties, and (d) no specific property address (e.g., roadways).

> **o.**     **The Sheriff's Department's June 26, 2020 Response to RFP No. 13**

Because the Sheriff's Department and County of San Bernardino are essentially the same entity and the requests for production to each entity are identical, to avoid redundancy the Sheriff's Department refers Propounding Party to the County of San Bernardino's response to this request, which includes Sheriff Department-specific information, where appropriate.

> **p.**     **RFP No. 14 to the County**

Documents and data sufficient to show the date and location of homicides in Hesperia from January 1, 2010 to present, and the home address of alleged perpetrators of those homicides, including the property address(es) and parcel number(s), separately producing or identifying homicides occurring at (a) residential owner-occupied properties, (b) residential rental properties, (c) non-residential properties, and (d) no specific property address (e.g., roadways).

> **q.**     **The County's June 26, 2020 Response to RFP No. 14**

The General Objections are hereby incorporated by reference as if set forth in full herein. Responding Party objects to the extent that this request is overbroad and unduly burdensome because it seeks a compilation of specific data which is not kept within Responding Party's usual course of business. This request may also require the production of documents that violate a third party's constitutional rights to privacy

1  afforded by the United States and California Constitutions (Cal. Const. Art. 1, § 1;

2  *Griswold v. State of Connecticut* (1965) 381 U.S. 479, 484 [right to privacy is

3  guaranteed by the U.S. Constitution]. This overbroad request also seeks documents

4  subject to the official information privilege, law enforcement privilege, and

5  documentation subject to investigatory files privilege, and official confidential

6  information subject to public interest privileges.

7      Subject to and without waiving the foregoing objections and pursuant to the

8  scope set forth in Rule 26(b), Responding Party responds as follows: Responding

9  Party will produce documents responsive to this request limited to what is kept within

10  the normal course of business, but cannot fully comply with such an overbroad and

11  burdensome request. Responding Party reserves the right to supplement its production

12  pursuant to Rule 26(e).

13          **r.     The County's Dec. 11, 2020 Supplemental Response to RFP**

14          **No. 14[7]**

15      Objection. Responding Party objects on the grounds that: (a) the Request

16  seeks documents that are not reasonably calculated to lead to admissible evidence; (b)

17  the Request is compound; (c) the Request is overbroad and disproportionate violating

18  FRCP 26(b)(1); (d) the Request lacks foundation and assumes disputed facts; (e) insofar

19  as the Request seeks documents protected by the attorney-client privilege and/or the

20  work-product privilege, the records are privileged; and (f) insofar as the discovery

21  violates third parties' constitutional rights to privacy afforded by the United States and

22  California Constitutions, the records are privileged.

23      Subject to and without waiving the foregoing objection, Responding Party

24  responds as follows: Defendant has produced all non-privileged responsive documents in

25  its possession, custody, or control including documents bates stamped COUNTY001022,

26  COUNTY006563 - COUNTY006569, and COUNTY006579-COUNTY006594.

27

28

---

[7] The County incorrectly referred to this Request as Request No. 13 in its Supplemental
Responses.

1       **s.**    **RFP No. 14 to the Sheriff's Department**

2     Documents and data sufficient to show the date and location of homicides in

3 Hesperia from January 1, 2010 to present, and the home address of alleged perpetrators

4 of those homicides, including the property address(es) and parcel number(s), separately

5 producing or identifying homicides occurring at (a) residential owner-occupied

6 properties, (b) residential rental properties, (c) non-residential properties, and (d) no

7 specific property address (e.g., roadways).

8       **t.**    **The Sheriff's Department's June 26, 2020 Response to RFP**

9         **No. 14**

10     Because the Sheriff's Department and County of San Bernardino are essentially

11 the same entity and the requests for production to each entity are identical, to avoid

12 redundancy the Sheriff's Department refers Propounding Party to the County of San

13 Bernardino's response to this request, which includes Sheriff Department-specific

14 information, where appropriate.

15       **u.**    **RFP No. 15 to the County**

16     Documents and data classifying or identifying properties in Hesperia by address as

17 (a) residential owner-occupied properties, (b) residential rental properties, and (c)

18 nonresidential properties, including maps, zoning data, geographic information system

19 (GIS) data, utilities data, and/or tax assessment data.

20       **v.**    **The County's June 26, 2020 Response to RFP No. 15**

21     The General Objections are hereby incorporated by reference as if set forth in

22 full herein. Responding Party objects to the extent that this request is overbroad and

23 unduly burdensome because it seeks a compilation of specific data which is not kept

24 within Responding Party's usual course of business. This request may also require the

25 production of documents that violate a third party's constitutional rights to privacy

26 afforded by the United States and California Constitutions (Cal. Const. Art. 1, § 1;

27 *Griswold v. State of Connecticut* (1965) 381 U.S. 479, 484 [right to privacy is

28 guaranteed by the U.S. Constitution].

1    Subject to and without waiving the foregoing objections and pursuant to the
2    scope set forth in Rule 26(b), Responding Party responds as follows: Responding
3    Party will produce documents responsive to this request limited to what is kept within
4    the normal course of business, but cannot fully comply with such an overbroad and
5    burdensome request. Responding Party reserves the right to supplement its production
6    pursuant to Rule 26(e).

7              **w.    The County's Dec. 11, 2020 Supplemental Response to RFP**
8                      **No. 15[8]**

9    Objection. Responding Party objects on the grounds that: (a) the Request
10   seeks documents that are not reasonably calculated to lead to admissible evidence; (b)
11   the Request is compound; (c) the Request is overbroad and disproportionate violating
12   FRCP 26(b)(1); (d) the Request lacks foundation and assumes disputed facts; (e) insofar
13   as the Request seeks documents protected by the attorney-client privilege and/or the
14   work-product privilege, the records are privileged; and (f) Objection. Responding Party
15   objects on the grounds that: (a) the Request seeks documents that are not reasonably
16   calculated to lead to admissible evidence; (b) the Request is compound; (c) the Request
17   is overbroad and disproportionate violating FRCP 26(b)(1); (d) the Request lacks
18   foundation and assumes disputed facts; (e) insofar as the Request seeks documents
19   protected by the attorney-client privilege and/or the work-product privilege, the records
20   are privileged; and (f) insofar as the discovery violates third parties' constitutional rights
21   to privacy afforded by the United States and California Constitutions, the records are
22   privileged.

23   Subject to and without waiving the foregoing objection, Responding Party
24   responds as follows: Defendant has produced all non-privileged responsive documents in
25   its possession, custody, or control including documents bates stamped COUNTY009170
26   - COUNTY13385, COUNTY006564 - COUNTY006596, DEF000164-169,

27   _____
     [8] The County incorrectly referred to this Request as Request No. 14 in its Supplemental
28   Responses.

DEF000427-000442, DEF000937-000962, DEF001123-001131, DEF001154-001172, and DEF001587-001591.

### x.    RFP No. 15 to the Sheriff's Department

Documents and data classifying or identifying properties in Hesperia by address as (a) residential owner-occupied properties, (b) residential rental properties, and (c) nonresidential properties, including maps, zoning data, geographic information system (GIS) data, utilities data, and/or tax assessment data.

### y.    The Sheriff's Department's June 26, 2020 Response to RFP No. 15

Because the Sheriff's Department and County of San Bernardino are essentially the same entity and the requests for production to each entity are identical, to avoid redundancy the Sheriff's Department refers Propounding Party to the County of San Bernardino's response to this request, which includes Sheriff Department-specific information, where appropriate.

### z.    RFP No. 16 to the County

Documents reporting or tracking, by address of a property, information relating to criminal activity, nuisance activity, Sheriff's activity, or calls for service at properties in Hesperia, including monthly "crime analysis" reports and other monthly call logs, "CFMHP reports," "CPRA history reports," and call for service reports.

### aa.    The County's June 26, 2020 Response to RFP No. 16

The General Objections are hereby incorporated by reference as if set forth in full herein. Responding Party objects to the extent that this request is overbroad and unduly burdensome as it seeks all documentation for an unlimited time period rendering this request beyond the scope and limit of Rule 26(b) and disproportionate to the needs of this case. This request also seeks a compilation of specific data which is not kept within Responding Party's usual course of business. This request may also require the production of documents that violate a third party's constitutional rights to privacy afforded by the United States and California Constitutions (Cal. Const. Art.

1, § 1; *Griswold v. State of Connecticut* (1965) 381 U.S. 479, 484 [right to privacy is guaranteed by the U.S. Constitution]. The request is also vague and ambiguous as to what is meant by CFMHP reports and CPRA history reports, as Responding Party does not know what is being requested. This overbroad request also seeks documents subject to the official information privilege, law enforcement privilege, and documentation subject to investigatory files privilege, and official confidential information subject to public interest privileges.

Subject to and without waiving the foregoing objections and pursuant to the scope set forth in Rule 26(b), Responding Party responds as follows: Responding Party cannot comply because this request is extremely overbroad, burdensome and unintelligible. Responding Party reserves the right to supplement its production pursuant to Rule 26(e).

### bb.    The County's Dec. 11, 2020 Supplemental Response to RFP No. 16[9]

Objection. Responding Party objects on the grounds that: (a) the Request is compound; (b) the Request lacks foundation and assumes disputed facts; (c) insofar as the Request seeks documents protected by the attorney-client privilege and/or the work-product privilege, the records are privileged; and (d) insofar as the discovery violates third parties' constitutional rights to privacy afforded by the United States and California Constitutions, the records are privileged.

Subject to and without waiving the foregoing objection, Responding Party responds as follows: Defendant has produced all non-privileged responsive documents in its possession, custody, or control including documents bates stamped COUNTY006564-COUNTY006596, COUNTY013388-COUNTY013389, DEF000737, DEF000804, and DEF001587-001591.

---

[9] The County incorrectly referred to this Request as Request No. 15 in its Supplemental Responses.

### cc.     RFP No. 16 to the Sheriff's Department

Documents reporting or tracking, by address of a property, information relating to criminal activity, nuisance activity, Sheriff's activity, or calls for service at properties in Hesperia, including monthly "crime analysis" reports and other monthly call logs, "CFMHP reports," "CPRA history reports," and call for service reports.

### dd.     The Sheriff's Department's June 26, 2020 Response to RFP No. 16

Because the Sheriff's Department and County of San Bernardino are essentially the same entity and the requests for production to each entity are identical, to avoid redundancy the Sheriff's Department refers Propounding Party to the County of San Bernardino's response to this request, which includes Sheriff Department-specific information, where appropriate.

## 2.     The United States' Position

Again making numerous boilerplate objections and unsupported claims of privilege, Defendants have failed to provide responsive documents and information for RFP Nos. 11–16, which seek several categories of police activity and residential property data. The only responsive data Defendants provided was in connection with the Crime Free Program, even though RFP Nos. 11–16 sought data that was not limited to the Program. And Defendants have provided the *names* of certain systems where the data sought by RFP Nos. 11–16 are stored, but not the *actual data* sought by the United States' document requests. Nor have Defendants provided sufficient identifying information about them to enable the parties to have productive discussions about the most effective and least burdensome ways to produce the data.

Moreover, the disclosures of the names of the data systems trickled out over time and Defendants have not clarified that they have even identified all the responsive data systems. On a call on November 20, 2020, Defendants for the first time mentioned two data systems that Sheriff's Department staff access for criminal background information, CII and CLETS, and on November 30, 2020, Defendants mentioned another system

called JMS. *Id.* ¶17. In a call on January 12, 2021, Defendants stated that Sheriff's Department staff who enforced the Program used a County database called PIMS to determine whether residential properties in Hesperia were rental properties. *Id.* Defendants also stated that the Sheriff's Department uses law enforcement dispatch software produced by a company called Tiburon to input and receive information about Sheriff's Department activities, including for 911 calls. However, Defendants have not even identified the name of the software or the range of data available in that system. *Id.* Indeed, apart from stating that the Sheriff's Department uses these data systems, Defendants have produced no further requested information about them. *Id.* ¶18.

In a final attempt to avert the need to bring this issue before the Court, the United States proposed taking early, partial depositions of the County and Sheriff's Department under Federal Rule of Civil Procedure 30(b)(6) to inquire about data systems. *Id.* ¶19. However, Defendants added conditions that effectively defeated the purpose.[10]

As the United States has repeatedly discussed with Defendants, including in its October 30 and November 2, 2020 Rule 37 letters and in several meet-and-confer meetings in November 2020 through March 2021, the requested police activity and residential property data from the relevant period—not limited to data generated for the Crime Free Program—is highly relevant to whether Defendants enforced the Program disparately on the basis of race and national origin, and whether Defendants enforced it in a manner consistent with its purported crime-reduction rationale. The unsupported, boilerplate objections Defendants have asserted in response to these requests are

---

[10] On February 3, 2021, at Defendants' request, the United States sent proposed notices of depositions that outlined with specificity the topics that the United States intended to inquire about so that Defendants could adequately prepare their chosen deponents. Then, on a February 5, 2021 call, Defendants told the United States they would agree to a first-phase Rule 30(b)(6) deposition of the Sheriff's Department but not the County. *Id.* ¶21. On February 10, 2021, the United States sent Defendants an email agreeing to this condition, even though Defendants had told the United States that one of the data systems at issue, PIMS, was maintained by County staff outside the Sheriff's Department. *Id.* ¶¶18, 21. But then, on a February 22, 2021 call and in subsequent communications on February 24 and March 2, 2021, Defendants raised objections to many of the topics in the United States' proposed Rule 30(b)(6) notice. *Id.* ¶21.

inappropriate as a matter of law. Furthermore, Defendants' unsupported, boilerplate claims of privilege are likewise inapposite. Therefore, Defendants have no basis for withholding the responsive data, and should be compelled to produce it.

> ### a. Defendants Have Failed to Provide Materially Responsive Data Based on Unsupported, Legally Insufficient Boilerplate Objections.

On the basis of unsupported, boilerplate objections, Defendants have failed to provide several categories of police activity and residential property data that are responsive to RFP Nos. 11–16.

As discussed in Part II.A.2.b *supra*, Defendants asserted boilerplate objections in response to every one of the United States' April 23, 2020 requests for production—both in their original June 26, 2020 responses and in their supplemental responses provided on November 13, 2020 (the City) and December 11, 2020 (the County and Sheriff's Department)—that they have refused to withdraw despite the Federal Rules' clear instructions, the United States' sending Local Rule 37-1 deficiency letters on October 30, 2020 (to County and Sheriff's Department) and November 2, 2020 (the City), multiple meet-and-confer calls discussing the deficiencies between November 2020 and January 2021. *See supra* Part II.A.2.b.

Besides lacking support, these boilerplate objections are also inapposite and fail as a matter of law. The County objected to RFP Nos. 11–15 on the grounds that they were "not reasonably calculated to lead to admissible evidence." This unsupported objection does not reflect the current standard and is inappropriate. *See supra* Part II.A.2.b. In addition, the County objected to RFP Nos. 11–15 on the grounds that they were "overbroad and disproportionate." Defendants provided no support for this objection for any of these requests, which is insufficient and improper. *See id.*

Regardless, the sources of data sought by these requests are relevant and proportionate to the needs of this case, on multiple grounds. First, Defendants purported to rely on such data in providing the crime-prevention rationale for enacting the

1  Program. As discussed in Part II.A.2 *supra*, the Sheriff's Department produced data
2  points purporting to show that rental properties had a disproportionate share of calls for
3  service and homicides. This specifically implicates RFP Nos. 11 (calls for service), 14
4  (homicides), 15 (property rental status), and 16 (the relationship between Sheriff's
5  Department activity and rental status). The United States has alleged that this rationale
6  was pretextual, *see* Nickell Decl. Ex. 3, ECF No. 31 at 9 ¶30, and thus is entitled to
7  discovery to scrutinize the data that Defendants drew upon to provide this rationale.

8       Second, Defendants have asserted as a defense that the Program served a
9  legitimate crime-prevention purpose. The United States cannot evaluate that defense
10 without evaluating data in Defendants' possession, custody, or control purporting to
11 show that rental properties were disproportionately the loci of crime. *See* Nickell Decl.
12 Ex. 4, ECF No. 32, at 16–17 (City raising as affirmative defenses that there was no
13 unlawful custom, policy, or practice, and that its underlying conduct fell within a "direct
14 threat" exception to the Fair Housing Act, 42 U.S.C. § 3604(F)(9)); Nickell Decl. Ex. 5,
15 ECF No. 33, at 8 (same affirmative defenses pleaded by County and Sheriff's
16 Department). To evaluate this, all the categories of data sought by RFP Nos. 11–16 are
17 materially relevant, including calls for service (RFP 11), criminal citations or
18 summonses (RFP 12), arrest data (RFP 13), homicide data (RFP 14), rental property
19 status (RFP 15), and documents connecting purported criminal activity with specific
20 locations (RFP 16).

21      Third, the United States has alleged that Defendants enforced the Program in a
22 manner that disproportionately targeted certain people and parts of the City for reasons
23 unrelated to purported criminal activity. The United States should be provided
24 comparative police activity data from across Hesperia, *i.e.*, not limited to the Program, to
25 prove that claim. *See* Nickell Decl. Ex. 3, ECF No. 31, at 3, 12–14. And fourth, the
26 residential rental property information is crucial to show which locations where crime
27 occurred are rental properties. Therefore, all the categories of information sought by RFP
28 Nos. 11–16 are critical for evaluating the claims and defenses in this action.

During the meet-and-confer process, Defendants have argued that the only relevant police activity data is information produced through or in connection with the Program, such as crimes or calls for service that led to action under the Program—i.e., to evictions. That is incorrect. In fact, data about crime that did *not* lead to evictions under the Program is highly relevant. Such data is necessary so that the finder of fact can determine whether Defendants were enforcing the Program in a manner that was disparate against African-American and Latino residents in comparison with their other law enforcement activities. This issue requires understanding what types of crimes were happening in Hesperia, and at what locations, so that the finder of fact can determine whether Defendants were enforcing the Program in a manner that was disparate when compared to their other law enforcement activities.

Likewise, the residential property data sought is essential to determine what police activity was occurring at residential rental properties versus other property types. Comparing the two is necessary to understand whether the crime prevention rationale for the ordinance—*i.e.*, the notion that crime was and is higher in rental properties as opposed to other property types—has a factual basis. It is only by comparing these broader sets of police activity and residential property data to Program enforcement data that one can assess whether the Program disproportionately targeted certain areas, whether Defendants enforced it to advance the proffered "legitimate business interests" in reducing crime, and whether it was effective in doing so. Defendants cannot unilaterally limit the discovery sought in this litigation based on their narrow and unsupported interpretation of what is relevant.

Moreover, the United States has repeatedly attempted to work with Defendants to minimize any potential burdens for Defendants to produce the requested data. Since it served its initial requests for production on April 23, 2020, the United States has repeatedly told Defendants that, if Defendants provided information about the data systems where the requested data was stored and generated, this could enable the United States to determine whether there are ways to narrow its requests or identify efficient

1   ways to export the data they contain. Nickell Decl. ¶19. To that end, since the parties'

2   initial Rule 26(f) conference in May 2020, the United States has repeatedly suggested

3   setting up a call between the parties' IT staff to discuss Defendants' data systems and the

4   most efficient ways to obtain relevant information from them. *Id.* Defendants have

5   refused these offers. *Id.* The United States has also suggested that Defendants consider

6   options such as using screen-sharing so Defendants could demonstrate for the United

7   States' IT staff the key features of some of their software or data systems, including their

8   options for searching, sorting, and exporting responsive data, which Defendants have

9   also declined. *Id.* ¶20. Because the information sought is relevant and proportionate to

10  the needs of this case, the Court should compel Defendants to produce it.

11        Defendants' other boilerplate objections also fail. The County asserts that RFP

12  Nos. 11–16 "lack[] foundation and assume[] disputed facts." However, the County

13  provided no information to support these objections. But even if it had, the objection

14  would fail, because it is plain what types of data the requests are seeking and they do not

15  assume any facts. Defendants thus are inappropriately "conjur[ing] up ambiguity where

16  there is none" and these objections fail. *See supra* Part II.A.2.b.

17        Furthermore, the County objects that each of RFP Nos. 11–16 is compound, once

18  again without support. Just as discussed in Part II.A.2.b *supra*, this unsupported

19  objection is especially inappropriate in response to a request for production. Therefore,

20  this boilerplate objection too fails. Because Defendants' unsupported boilerplate

21  objections to RFP Nos. 11–16 all fail, they cannot shield responsive data from

22  disclosure.

23        **b.    Defendants' Claims of Privilege are Unsupported and**

24               **Inapposite.**

25        The United States is entitled to all responsive, non-privileged police activity and

26  residential property data sought. Defendants raised unsupported and inapposite privilege

27  claims in response to all of RFP Nos. 11–16.

28        Defendants objected to each of these requests based on the attorney-client

1   privilege and work product doctrine. As with data and information concerning the

2   enactment of the Program, Defendants' unsupported claims of attorney-client privilege

3   and work product cannot shield this information from disclosure because the requests do

4   not seek attorney-client communications and do not seek documents prepared in

5   anticipation of litigation or trial. *See In re Pac. Pictures Corp.*, 679 F.3d at 1126; *In re*

6   *Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*, 357 F.3d at 907.

7        Defendants also objected to all these requests based on purported "constitutional

8   rights to privacy afforded by the United States and California Constitutions." Just as for

9   the requests discussed in Part II.A.2.c *supra*, Defendants offered no factual basis for their

10  assertion that the documents are protected by a constitutional right to privacy, or that the

11  parties' Stipulated Protective Order would be insufficient. The citations they provide to

12  the state constitution and the Supreme Court's *Griswold* decision are inapposite and fail

13  to establish that there is any privacy interest here that should be shielded from disclosure

14  despite the parties' Stipulated Protective Order and the public interest in disclosure in

15  civil rights cases. *See supra* Part II.A.2.

16       To conclude, Defendants have failed to provide the police activity and residential

17  property data sought by RFP Nos. 11–16, even though that data is plainly relevant to

18  claims and defenses in this action. Defendants' unsupported, boilerplate objections and

19  purported claims of privilege all fail and cannot serve to shield this data from disclosure.

20  Accordingly, the Court should compel Defendants to produce the data sought by these

21  requests. In addition, it should require Defendants to describe with specificity the steps

22  taken to search for the data so that the Court may assess the thoroughness of those

23  searches.

24                    **3.    Defendants' Position**

25                         **a.    Request for Production No. 11**

26       This request seeks "[d]ocuments and data showing calls for service by Sheriff at

27  locations in Hesperia including information about the race of the individual(s) involved,

28  the property address, and the parcel number, separately producing or identifying calls for

service at (a) residential owner-occupied properties, (b) residential rental properties, (c) non-residential properties, and (d) no specific property address (e.g., roadways)."

Defendants complied with this request in connection with the Crime Free Ordinance, despite the overbroad and burdensome nature of the discovery.  The USA is not entitled to every and all unspecified documentation related to calls that the Sheriff's Department receives unrelated to the Crime Free Ordinance. This request also requires the creation of documents which are not kept within Defendants' usual course of business and which do not exist rendering the request unduly burdensome and beyond the scope of permissible discovery. *Rogers v. Giurbino*, 288 F.R.D. 469, 485 (S.D. Cal. 2012) ("[a] party. . . is not required to create a document were none exists").

Notwithstanding, the County still in good faith produced a substantial amount of documents in response to this request as attached to the La Decl. The County's initial production consisted of 832 separate documents identified as COUNTY00001-832, supplemental productions included  COUNTY003217-COUNTY006562, COUNTY013302-13361, COUNTY014798-COUNTY 14812.   Despite Defendants' substantial production of over 4,000 documents in response to this request, the USA asserts that the County is withholding information/documents but fails to specify what exactly has been withheld. Defendants have already explained that a single document containing all of the data points requested, (a)-(d) does not exist.

### b.      Request for Production No. 12

This request seeks "[c]itations or summonses issued by the Sheriff for criminal violations in Hesperia and/or residents of Hesperia including information about the race of the individual(s) involved, the property address, and the parcel number, separately producing or identifying those citations or summonses issued to a resident of or for a violation occurring at (a) residential owner-occupied properties, (b) residential rental properties, (c) non-residential properties, and (d) no specific property address. . ."

As set forth above, this request is burdensome, overbroad and essentially seeks every citation issued for "criminal violations" and every document initiating every

criminal prosecution, he creation of documents which are not kept within Defendants' usual course of business, and documents which do not exist rendering the request unduly burdensome and beyond the scope of permissible discovery and Rule 26(b). *Rogers v. Giurbino*, 288 F.R.D. 469, 485 (S.D. Cal. 2012) ("[a] party. . . is not required to create a document were none exists"). Again, the County produced documents identified as COUNTY000833-COUNTY01020 and supplemented its production to include COUNTY013302-COUNTY013383. The document production consisted of citations related to the Crime Free Program, statistics related to crime, and arrests in Hesperia. The County also produced a spreadsheet that kept track of all citations issued in relation the Crime Free Program which is also responsive to this request including but not limited to COUNTY013388-013389, COUNTY006582, COUNTY006564. Copies of citations and other documents related to citations were produced in Defendants' initial disclosures including but not limited to DEF000427-442, DEF00937-000962. Defendants have already explained that a single document containing all of the data points requested, (a)-(d) does not exist.

### c.      Request for Production No. 13

This  requests seeks data about "arrests—including arrest reports, incident reports, charging statements, probable cause affidavits, audio and video recordings, and other arrest records—occurring in Hesperia and/or arrests of individuals then-residing in Hesperia including information about the race of the individual(s) involved, the property address, and the parcel number, separately producing or identifying those documents relating to arrests occurring at or of individuals residing in (a) residential owner-occupied properties, (b) residential rental properties, (c) non-residential properties, and (d) no specific property address (e.g., roadways)."

As discussed, to compile such information is unduly burdensome and beyond the scope of FRCP 26(b).  This overbroad request also unreasonably seeks everything related to any arrest that occurred in Hesperia without limitation or regard to open investigations and arrest records that subject to state constitutional right of privacy.

Notwithstanding, the County supplemented its response to include responsive documents within its possession, COUNTY 13302-COUNTY013383. The County's third supplemental production also included COUNTY014798-COUNTY 14812. These documents provided statistical data kept related to arrests from 2014-2019.

### d.    Request for Production 14

This request seeks "data sufficient to show the date and location of homicides in Hesperia from January 1, 2010 to present and home address of alleged perpetrators of those homicides, including the property addresses(es) and parcel numbers(s), separately producing or identifying homicides occurring at (a) residential owner-occupied properties, (b) residential rental properties, (c) non-residential properties, and (d) no specific property address. . ."

The County does not keep documents in the manner as requested by the USA, and would require the creation of documents that otherwise do not exist. Still, the County supplemented its responsive production to this request to include statistical data related to homicides in Hesperia as well as Hesperia's annual crime reports which includes data related to homicides. Furthermore, emails have already been produced related to homicides occurring in rental properties as part of an initial exchange of documents with HUD in 2016 (e.g. US00056143, US000849, US00058491.)

### e.    Request for Production 15

This request seeks "data classifying or identifying properties in Hesperia by address as (a) residential owner-occupied properties, (b) residential rental properties, (c) non-residential properties, including maps, zoning data, geographic  information system (GIS) data, utilities data, and/or tax assessment data."

Notwithstanding this overbroad and disproportionate request, the County produced all known documents responsive to this request **and has not withheld any responsive documents based on privilege**. The production includes multiple spreadsheets containing the address of known rental and residential properties in Hesperia and various notes related to same (e.g. COUNTY006563-6596).

### f.   Request for Production 16

This request seeks documents "reporting or tracking, by address of a property, information relating to criminal activity, nuisance activity, Sheriff's activity, or calls for service at properties in Hesperia, including monthly "crime analysis" reports and other monthly call logs, "CFMHP reports," "CPRA history reports," and call for service reports.

**Defendants have produced all known documents responsive to this request and has not withheld any documents based on privilege**, including but not limited to all spreadsheets used to track the crime free program and all data extracted from the Crime Free Program database which is Defendants' main source for tracking the criminal activity related to the program. Additionally, Defendants produced all call history reports that were generated in relation to this program, including but not limited to COUNTY009170 -13299, COUNTY006563-6596, COUNTY013388-COUNTY013389.

### C.   Defendants' Privilege Logs Show That They Are Inappropriately Withholding Communications Based on Unsupported and Inapposite Privilege Claims

### 1.   The United States' Position

The Defendants' privilege logs show that they are withholding communications that appear not to be protected by the privileges claimed. The United States has attempted to resolve these issues with Defendants. Its October 30, 2020 Local Rule 37-1 letter to the County and Sheriff's Department, and November 2, 2020 Local Rule 37-1 letter to the City discussed these deficiencies in the Defendants' original June 26, 2020 privilege logs. Nickell Decl. ¶23; *see also id.* Exs. 20–23 (letters). The City's revised privilege log provided on November 13, 2020 and supplemental privilege log provided April 9, 2021 added additional entries but did not address any of the deficiencies the United States identified in its letter. *See id.* ¶24; *id.* Exs. 28–29 (City's Nov. 13, 2020 revised privilege log and Apr. 9, 2021 supplemental privilege log). The County has

never provided a revised or supplemental privilege log. *Id.* ¶25; *see also id.* Ex. 30 (County privilege log). Because the United States has not been able to resolve these issues with Defendants through the meet-and-confer process, the United States seeks an order from the Court compelling Defendants to provide the documents they have withheld based on inappropriate claims of privilege.

> ### a.   Communications in the City's Privilege Log Between City Attorneys and a Sheriff's Department Captain Predating the Crime Free Program Should be Produced

On its privilege log, the City indicated that it is withholding eleven email communications between City attorneys and then-Sheriff's Department Captain Bentsen that predate the adoption of the Program in November 2015. *See* Nickell Decl. Ex. 28, City Nov. 13, 2020 Revised Privilege Log at 76–81 (rows 294–295, 297–301, 305–307). The City claims that all these communications are protected by the attorney-client privilege and work product doctrine, and that a subset (rows 299–300, 305–307) are also protected by the deliberative process privilege and joint defense privilege. *Id.* The communications have descriptions like "Email from city attorney's office containing legal advice and analysis re: HUD and crime free ordinance" and "Email containing legal advice and analysis re: crime free ordinance." *See id.* at 77–78 (rows 297 and 299). The City claims that all these communications are protected by the attorney-client privilege and work product doctrine, and that a subset (rows 299–300, 305–307) are also protected by the deliberative process privilege and joint defense privilege. *Id.*

None of these claimed privileges apply. Because all these communications included the Sheriff's Department Captain Nils Bentsen—who, at the time, was not a City official or employee—they were not protected attorney-client communications. *See supra* Part II.A.2.c. In addition, because the communications concerned the Program before it was even adopted let alone challenged, they were not prepared in anticipation of litigation for a party to that litigation, so the work product doctrine does not apply. *See id.*

These documents also would not be shielded by the deliberative process privilege, which requires a showing that the documents in question are pre-decisional and deliberative. *See id.* The City (the only entity that asserted the privilege in its privilege log) has not attempted to show that the communications at issue are pre-decisional and deliberative. Therefore, the City's unsupported attempt to shield these communications by the deliberative process privilege fails. *See id.*

The City's invocation of the joint defense privilege to shield these communications is also inappropriate. The joint defense privilege applies only if communications are made as part of a joint defense effort, they are designed to further the effort, and the privilege has not been waived. *See id.* Defendants have not attempted to make this showing for any the communications listed in the City's privilege log that are purportedly withheld due to the privilege. *See id.* Furthermore, because the communications occurred before the Program was even adopted and over six months before even the independent HUD investigation began, there was nothing to defend against jointly or otherwise, let alone to defend against the present civil action which would not be filed for several years. *See id.* Because all the privileges used to shield the email communications between the City Attorney and Mr. Bentsen predating the adoption of the Program are unsupported and inapposite, those communications should be produced.

**b.**   **Communications in the City's Privilege Log Forwarding or Discussing Attorney Communications Should be Produced with Privileged Contents Redacted**

In addition, the City's privilege log shows it is withholding various communications between non-attorney personnel from within the City and Sheriff's Department simply because they were forwarding or discussing attorney communications. *See* Nickell Decl. Ex. 28, City Nov. 13, 2020 Revised Privilege Log at 1–3, 5, 8, 9, 13, 17, 18, 21, 25, 27, 28, 31–35, 36, 38–40, 46, 47, 50–60, 64–68, 72, 80–83 (rows 3, 6, 9, 14, 15, 26–28, 49, 51, 67, 71–73, 80, 97, 99, 107–09, 111, 126, 129–

1    133, 139, 143, 149–156, 182–184, 196–199, 201–204, 208–211, 213, 215–216, 219–

2    220, 223–224, 226–229, 231, 247–248, 252, 255, 257–258, 260–261, 264, 279, 304,

3    308, 310–313, 317); *Id.* Ex. 29, City Apr. 9, 2021 Supplemental Privilege Log at 3–7

4    (rows 330, 333, 338–340, 342, 348). However, while attorney communications being

5    forwarded or discussed might be protected, this does not mean that the emails between

6    non-attorney personnel are automatically protected also. The City should have produced

7    these communications, including all attachments, with the privileged portions of the

8    communications (i.e., the forwarded attorney communications) redacted. *See Upjohn Co.*

9    *v. United States*, 449 U.S. 383, 395-96 (1981); *see also O'Connor v. Boeing North Am.,*

10   *Inc.*, 185 F.R.D. 272, 280 (C.D. Cal. April 1999) (citations omitted) (requiring email

11   attachments or enclosures to be listed separately); *Jones v. Boeing Co.*, 163 F.R.D. 15,

12   18 (D. Kan. 1995) (holding that "a showing of privilege as to each document" is

13   required). Instead, the City inappropriately withheld these communications in their

14   entirety. These communications should be produced, with the privileged attorney-client

15   portions of the communications redacted.

16             **c.**    **Communications in the County's Privilege Log Predating**

17                     **the Crime Free Program That List Mr. Bentsen as**

18                     **"Author" and the City of Hesperia as "Recipient[]" Should**

19                     **Be Produced**

20         The County's privilege log[11] shows that it is also inappropriately withholding

21   various email communications based on privilege claims. The County claims the

22   attorney-client privilege and work product doctrine as the bases for withholding every

23   communication listed on its log. *See* Nickell Decl. Ex. 30, County June 26, 2020

24   Privilege Log, at 1–16. For each entry, all of which are emails, the County claims that

25   the City of Hesperia is the "Recipients/Holds Of Privilege," which suggests that City

26

27   _____

    [11] The Sheriff's Department has never provided a privilege log. For the purposes of this
28   motion, the United States assumes that Defendants intended for the County's privilege
    log to apply with respect to both the County and the Sheriff's Department.

staff or attorneys were included on all these communications, but the entries are woefully insufficient to confirm that important fact, or to confirm that such privileges attached (e.g. depending on the subject matter) or were not waived (e.g. depending on who received the email messages). *See id.* Much like the City privilege log, the County log contains numerous emails sent to or from Mr. Bentsen while he was still serving as a Sheriff's Department captain. *Id.* Ex. 30 at 8–15. The attorney-client and work product privileges would not apply to any of these County-City communications, and the County has not asserted the joint defense privilege as a basis for protecting any of them—nor could it apply for many of the documents at least until HUD opened its investigation into the Program. *See supra* Part II.A.2.c.

Therefore, the Court should compel Defendants to produce them. In the alternative, the Court should compel the County to provide more information about the entries in the log to allow the Court to assess the applicability of the privileges claimed—including the specific identities of the recipients of the communications (including whether they were attorneys, and if so, attorneys for the City or the County), why the privileges attached even if persons other than officials or employees of the privilege-holder were involved, and sufficient detail about the subject matter(s) of the communications. *See* Fed. R. Civ. P. 26(b)(5)(A)(ii); *In re Syncor ERISA Litig.*, 229 F.R.D. 636, 644 (C.D. Cal. July 2005); *In re Banc of Cal. Sec. Litig.*, No. SA-CV-17-00118, 2019 WL 3017676, at *1 (C.D. Cal. Feb. 11, 2019) ("[T]he requisite detail for inclusion in a privilege log consists of [1] a description of responsive material withheld, [2] the identity and position of its author, [3] the date it was written, [4] the identity and position of all addressees and recipients, [5] the material's present location, [6] and specific reasons for its being withheld, including the privilege invoked and grounds thereof.").

### 2.    Defendants' Position

#### a.    City's Privileges

As a threshold matter, the USA has not once met and conferred about turning over

1    the specific email communications addressed in the City's privilege log that are now the

2    subject of this stipulation.  It appears from their conclusion below, they seek the

3    production of no less than 180 attorney-client privileged communications.  As the La

4    Decl. shows, at no point prior to this motion did the USA ever demand that specific

5    privileged email communications be produced, redacted or unredacted.  This line of

6    discovery has not once been discussed between the parties prior to the USA's

7    preparation of this Stipulation.

8         Moreover, the USA's contention that any communications rendering legal advice

9    which included the Sheriff's Department Captain Nils Bentsen—who, at the time, was

10   not a City official or employee—is not protected fails. The USA seeks to trample on

11   attorney-client privilege rights. A client's agent may be considered a party to the

12   attorney-client privilege. The California Evidence Code section 952 provides:

> [C]onfidential communication between client and lawyer"
> means information transmitted between a client and his or her
> lawyer in the course of that relationship and in confidence by a
> means which, so far as the client is aware, discloses the
> information to no third persons *other than those who are
> present to further the interest of the client in the consultation
> or those to whom disclosure is reasonably necessary for the
> transmission of the information or the accomplishment of the
> purpose for which the lawyer is consulted*, and includes a legal
> opinion formed and the advice given by the lawyer in the
> course of that relationship.

21        In relation to this the California Supreme Court stated the following: "[t]he matter

22   is privileged if the agent is required to communicate to the attorney something from the

23   client which the latter is unable to communicate himself, or where the communication

24   can better be transmitted through a specialist." (*Suezaki v. Superior Court of Santa Clara

25   County* (1962) 58 Cal.2d 166, 177.) Similarly, the federal common law of attorney-client

26   privilege applies the same principle. When evaluating privilege, courts rely on Proposed

27   Federal Rule of Evidence 503: "Although not enacted by Congress, 'courts have relied

28   upon it as an accurate definition of the federal common law of attorney-client

privilege.... 'Consequently, despite the failure of Congress to enact a detailed article on privileges, Standard 503 should be referred to by the Courts.'" *In re Bieter Co.*, 16 F.3d 929, 935 (8th Cir. 1994). The most relevant aspect of Standard 503 is its statement of the general rule (with emphasis added):

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, (1) ***between himself or his representative*** and his lawyer or his lawyer's representative, or (2) between his lawyer and his lawyer's representative, or (3) by him or his lawyer to a lawyer representing another in a matter of common interest, or (4) between representatives of the client or between the client and a representative of the client, or (5) between lawyers representing the client.

Courts have held that privileges are  not limited to communications with employees but can also attach to consultants. *McCaugherty v. Siffermann*, 132 F.R.D. 234, 239 (N.D. Cal. 1990).

Here, Plaintiff argues that communications with Nils Bentsen  are not privileged because he was not a City employee at the time of the communications. However, the USA omits the fact that the County of San Bernardino contracts with the City of Hesperia to provide all of the City's law enforcement.  This is evidenced by the  multiple law enforcement contracts produced by Defendants to the USA in discovery and the fact that the City agreed to represent the County in litigation matters in relation to its law services rendered to the City. Furthermore, the City also paid for Mr. Bentsen's salary. (See e.g., CITY000044-CITY000071). As the police captain for the Hesperia Police Station, Mr. Bentsen was acting on behalf of the City. Any communications between Mr. Bentsen and the City's attorneys were made within Mr. Bentsen's capacity as the City of Hesperia's police captain and on behalf of the City. Therefore, the attorney-client privilege applies in this context.

Plaintiff also argues that many of the communications are not subject to work

product privileges. Even if true, the attorney-client privilege should still apply.

### b.     County's Privileges

As explained by Defendants during the meet and confer process, Defendant County and Sheriff's Department are not withholding any documents that are responsive to any of the USA's requests based on attorney-client or work product privileges. Defendant County explained that any documents identified were duplicated based upon the County's privilege log that was produced in response to the prior HUD investigation but does not include any privileged documentation for the purposes of the this specific litigation.

### **CONCLUSION**

### A.     The United States' Conclusion

For the foregoing reasons, the United States requests that the Court compel Defendants to produce:

- complete responses to RFP Nos. 30 and 34, and Interrogatory No. 4, which seek information regarding the data used to justify for the Program, and the individuals who prepared it;

- the police activity and residential property data sought by RFP Nos. 11–16; and

- communications between then-Sheriff's Department Captain Nils Bentsen and City attorneys and staff listed in rows 294–295, 297–301, and 305–307 of the City's November 13, 2020 revised privilege log, *see* Nickell Decl. Ex. 28 at 76–81, and rows 1–76 from the County's privilege log for Nils Bentsen, *id.* Ex. 30 at 8–15, and to produce the communications among staff with privileged portions redacted listed in rows 3, 6, 9, 14, 15, 26–28, 49, 51, 67, 71–73, 80, 97, 99, 107–109, 111, 126, 129–133, 139, 143, 149–156, 182–184, 196–199, 201–204, 208–211, 213, 215–216, 219–220, 223–224, 226–229, 231, 247–248, 252, 255, 257–258, 260–261, 264, 279, 304, 308, 310–313, and 317 of the City's November 13, 2020 revised privilege log, *id.* Ex. 28, and rows 330, 333, 338–340, 342, 348 of the City's Apr. 9, 2021 supplemental privilege log, *id.*

Ex. 29.

Further, particularly given that deposition testimony indicates that Defendants failed to produce responsive information in their possession for RFP Nos. 30 and 34, and Interrogatory No. 4, the United States requests that the Court order Defendants to describe with specificity the steps taken to search for responsive information to those requests so that the Court may assess the diligence of those searches.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

**B.     Defendants' Conclusion**

Based upon Defendants' statements above and separate opposition in support,

Defendants request that the USA's motion to compel be denied in its entirety.

Dated: May 3, 2021                              Respectfully submitted,

TRACY L. WILKISON                               PAMELA S. KARLAN
Acting United States Attorney                   Principal Deputy Assistant Attorney General
Central District of California                  Civil Rights Division

DAVID M. HARRIS                                 SAMEENA SHINA MAJEED
Assistant United States Attorney                Chief, Housing and Civil
Chief, Civil Division                           Enforcement Section

KAREN P. RUCKERT                                R. TAMAR HAGLER
Assistant United States Attorney                Deputy Chief, Housing and Civil
Chief, Civil Rights Section, Civil Division     Enforcement Section

/s/ Matthew Nickell                             /s/ Christopher D. Belen
MATTHEW NICKELL*                                AURORA BRYANT
KATHERINE M. HIKIDA                             CHRISTOPHER D. BELEN
Assistant United States Attorneys               ABIGAIL A. NURSE
Civil Rights Section, Civil Division            Trial Attorneys
                                                United States Department of Justice
                                                Civil Rights Division
* I, Matthew Nickell, hereby attest that        Housing and Civil Enforcement Section
all other signatories listed, and on whose
behalf this filing is submitted, concur in      ANNA MEDINA
the filing's content and have authorized        Acting Deputy Chief, Federal Coordination
the filing.                                     and Compliance Section

                                                /s/ Alyssa C. Lareau
                                                ALYSSA C. LAREAU
                                                Trial Attorney
                                                United States Department of Justice
                                                Civil Rights Division
                                                Federal Coordination and Compliance Section

                                                *Attorneys for the United States of America*

Dated: April 30, 2021

ALESHIRE & WYNDER, LLP

/s/ D. Dennis La
STEPHEN R. ONSTOT
D. DENNIS LA
ERIKA D. GREEN
BRADEN J. HOLLY
*Attorneys for Defendants City of Hesperia, County of San Bernardino, and San Bernardino County Sheriff's Department*