PAMELA S. KARLAN
Principal Deputy Assistant Attorney General
SAMEENA SHINA MAJEED
Chief, Housing and Civil Enforcement Section
R. TAMAR HAGLER (CA State Bar No. 189441)
Deputy Chief, Housing and Civil Enforcement Section
ANNA MEDINA (DC Bar No. 483183)
Acting Deputy Chief, Federal Coordination and Compliance Section
AURORA BRYANT (LA Bar No. 33447)
CHRISTOPHER D. BELEN (VA Bar No. 78281)
ABIGAIL A. NURSE (NY Bar No. 5244512)
ALYSSA C. LAREAU (DC Bar No. 494881)
Trial Attorneys
    U.S. Department of Justice, Civil Rights Division
    950 Pennsylvania Ave. NW – 4CON
    Washington, D.C. 20530
    Telephone: (202) 616-2602, Facsimile: (202) 514-1116
    E-mail: Aurora.Bryant@usdoj.gov
TRACY L. WILKISON
Acting United States Attorney
DAVID M. HARRIS
Chief, Civil Division
KAREN P. RUCKERT (CA State Bar No. 315798)
Chief, Civil Rights Section, Civil Division
MATTHEW NICKELL (CA State Bar No. 304828)
KATHERINE M. HIKIDA (CA State Bar No. 153268)
Assistant United States Attorneys
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-8805, Facsimile: (213) 894-7819
    E-mail: Matthew.Nickell@usdoj.gov
Attorneys for Plaintiff United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF HESPERIA, et al.<br><br>Defendants. | Case No. 5:19-cv-02298 AB (SPx)<br><br>**DISCOVERY MATTER**<br><br>**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM RE: MOTION TO COMPEL DISCOVERY RESPONSES**<br><br>Fact Discovery Cutoff: Nov. 8, 2021<br>Expert Discovery Cutoff: Dec. 13, 2021<br>Pretrial Conference Date: Mar. 4, 2022<br>Trial Date: Mar. 22, 2022<br><br>Hon. Sheri Pym<br>United States Magistrate Judge |

The Court should grant the United States' motion to compel discovery responses notwithstanding Defendants' unfounded claims in the Joint Stipulation. First, the United States has satisfied its Local Rule 37 obligations by meeting and conferring with Defendants as to each disputed issue. Second, Defendants cannot assert the attorney-client privilege over emails between City Attorneys and then-Sheriff's Department employee Nils Bentsen because he was not a "functional employee" of the City. Third, contrary to Defendants' assertion that they produced all relevant police activity and residential property data, they have produced almost none from outside the "Crime Free" program, even though this data is essential for the United States to evaluate whether the program was enacted for a legitimate rather than pretextual purpose, or disparately enforced compared to where other police activity occurred.[1]

## I.    The United States Has Met Its Obligations to Meet and Confer

Contrary to Defendants' assertions, the United States properly met and conferred with Defendants concerning each issue raised in the stipulation.

First, as to the crime data that served as the Crime Free program's primary justification, the United States served multiple Rule 37 letters noting Defendants' failure to provide material responses to requests about this data. But even though Defendants previously stated they had provided all relevant information about this data, Hesperia's city manager's February 2021 deposition testimony revealed that Defendants' responses related to the relevant requests remained materially incomplete. *See* Joint Stip. at 14–23, ECF No. 43-1. The United States, having already advised Defendants in letters of its position that Defendants had failed to provide responsive information, was not required to restart the Local Rule 37 process after the city manager's testimony revealed

---

[1] Defendants' argument that HUD has regulations that purportedly resemble Defendants' "Crime Free" program is irrelevant to this discovery dispute. It also misconstrues the United States' claims, which do not challenge crime free programs per se but rather the specific program Defendants enacted and enforced. Defendants ignore, for example, that HUD provides due process rights to tenants accused of criminal acts before terminating tenancy rights. Defendants' mandatory eviction program lacks any such protections.

1

1   Defendants' responses were incomplete.[2] Regardless, the United States *twice* raised the

2   issue after the deposition and before sending Defendants the draft joint stipulation: in a

3   March 15, 2021 letter referring to "not-yet-identified Sheriff's Department employees . .

4   . [that the] City Manager . . . testified . . . worked on the collection and analysis of crime

5   data to support the [program's] adoption," and in a March 22, 2021 call in which the

6   United States stated it needed information about these employees. *See* Declaration of

7   Matthew Nickell dated May 25, 2021 ("Nickell Suppl. Decl.") ¶2(a).[3]

8        Second, the United States met its Local Rule 37 obligations concerning

9   Defendants' unsupported privilege claims. The United States' Rule 37 letters plainly

10  challenged Defendants' blanket, unsupported privilege assertions shielding these emails.

11  *See* ECF No. 43-2 at 471–72, 536–38 (Exs. 20 and 21 to Nickell Decl.). The parties

12  discussed these deficiencies in multiple November 2020 meet-and-confer calls. *Id.* ¶ 23.

13  But the County never amended its privilege log, and the City's amended logs did not

14  address these issues. *Id.* at 9–10, ¶¶24–25. The United States thus had no obligation to

15  send new letters or meet again with Defendants. *See* L.R. 37-1.

16  **II.  Defendants' claim of privilege between City attorneys and then-Sheriff's**

17  **Department employee Nils Bentsen is unfounded.**

18       Under Ninth Circuit law, the attorney-client privilege cannot shield emails

19  between City attorneys and then-Sheriff's Department employee Nils Bentsen. It does

20

---

21  [2] Defendants' demonstrated failure to produce responsive information about the crime
    data presented to the City Council justifies an order compelling Defendants to explain
22  steps they took to search for documents. Defendants assert such relief is inapt because
    they never claimed that no responsive documents existed. But Defendants effectively did
23  just this by stating that no responsive documents existed apart from the few City
    documents in which the crime data was presented. Their failure to disclose the sources,
24  analyses, and facts underlying the crime data presented to the Council—even though the
    city manager knew additional information existed—demonstrates the need for this relief.

25  [3] Defendants' April 30, 2021 amended initial disclosures—which included the name and
    title of a single additional individual who may have helped prepare this crime data, but
26  no additional facts or documents related to it, Nickell Suppl. Decl. ¶3—do not render
    this dispute moot. Mr. Bentsen testified that multiple Sheriff's Department staff helped
27  prepare the crime data, Joint Stip. at 23, so Defendants at minimum must provide these
    additional names as well as any additional facts, documents, and data associated with
28  their roles and the analysis they performed.

not appear—and Defendants have not asserted—that, while employed by the Sheriff's Department, Nils Bentsen managed City employees or served as the City's primary agent in attorney communications, nor have Defendants asserted he communicated with third parties on the City's behalf. Thus, he was not a "functional employee" to whom the City's attorney-client privilege extended.[4] *See United States v. Graf*, 610 F.3d 1148, 1159 (9th Cir. 2010) (pointing to these factors in finding contractor was a "functional employee" covered by attorney-client privilege between attorney and corporation); *Allergan USA, Inc. v. Prescriber's Choice*, No. SACV1701550DOCJDEX, 2018 WL 4742538, at *1 (C.D. Cal. Sept. 6, 2018) (rejecting claim that privilege applied to contractor absent "detailed factual showing" that contractor was a functional employee).[5] Defendants also did not make the required showing that the relevant emails were made to seek or provide legal advice. *See Nestle USA, Inc. v. Crest Foods, Inc.*, No. CV1607519JAKAFMX, 2018 WL 7507426, at *1 (C.D. Cal. May 3, 2018) (the party asserting privilege must show both "functional employee" relationship and that communications were legal advice).

### III. Defendants have not produced police activity and residential property data from outside the Crime Free Program needed to assess whether the program was enacted on pretextual grounds or disparately enforced.

Defendants have failed to produce police activity and residential property data critical to assess claims and defenses in this case, including calls for service, summonses, arrest and homicide records, and information about which properties are owner-occupied

---

[4] Defendants' assertion that the City "paid for Mr. Bentsen's salary" is misleading. The City undisputedly had a contract with the County for the Sheriff's Department to provide police services to the City, which included funds for various positions including Mr. Bentsen's. However, there is also no dispute that Mr. Bentsen's employer—which presumably paid his salary—was the Sheriff's Department, not the City.

[5] The sole decision Defendants cite to assert that the attorney-client privilege covered emails between City attorneys and Mr. Bentsen, *McCaugherty v. Siffermann*, 132 F.R.D. 234 (N.D. Cal. 1990), supports the United States' position. There, the court held the privilege extended to consultants hired by federal agencies who were the "functional equivalents of employees," *id.* at 239, but Defendants have made no such showing here.

or rentals. Defendants claim they provided all relevant data, but they produced almost no data created or maintained outside the Crime Free program. Without such data, the United States cannot (1) assess Defendants' basis for asserting there was a crime problem in rental housing, which was the purported justification for the program at the center of this case, or (2) determine whether the program disparately targeted individuals or parts of Hesperia for reasons unrelated to the incidence or geographic distribution of crime, which the United States must establish to prove its case. *See* Joint Stip. at 53–58.

Despite admittedly not producing most such data from outside the program, Defendants fail to show that the burden of production outweighs the data's high degree of relevance and materiality to central issues in this case. Defendants object that providing the information sought would be "overbroad and burdensome" but provide no specific support for this position, instead simply asserting the United States is "not entitled" to documents because they purportedly would be voluminous or would have to be created. Joint Stip. at 40, 60–62.[6] Such conclusory assertions do not meet Defendants' burden. *See DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002) ("The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections").

Regardless, Defendants should have no difficulty producing the requested data. Defendants created crime statistics for the City Council purporting to show the incidence of crimes at rentals versus other properties before enacting the Crime Free program, which would have required examining the same types of data sought here. So, the data sought plainly exists. Also, certain documents Defendants produced—including annual crime reports and a spreadsheet with names, charges, and other information for Hesperia criminal filings (COUNTY014438)—show that Defendants can generate reports with

---

[6] Defendants also assert that they cannot produce certain police activity data due to the privacy rights of third parties. But this ignores that there is a protective order in this case that adequately protects such sensitive information, ECF No. 21. Moreover, Defendants do not even attempt to weigh these purported privacy interests against the civil rights interests at issue in this case. *See* Joint Stip. at 33–34.

police activity data of the type sought.[7] Indeed, Defendants have never denied they could produce such reports or explained how doing so would be burdensome. Instead, they have rebuffed all offers to discuss minimally burdensome ways to produce such data, e.g. by arranging a meeting between information technology staff to coordinate.

Because the requested police activity and residential property data is essential to claims and defenses in this case, and Defendants have not demonstrated—because they cannot—that producing such data would be burdensome, the United States renews its request for an order compelling Defendants to produce the requested data.

Dated: May 25, 2021                           Respectfully submitted,

TRACY L. WILKISON                             PAMELA S. KARLAN
Acting United States Attorney                 Principal Deputy Assistant Attorney General
Central District of California                Civil Rights Division
DAVID M. HARRIS                               SAMEENA SHINA MAJEED
Assistant United States Attorney              Chief, Housing and Civil
Chief, Civil Division                         Enforcement Section
KAREN P. RUCKERT                              R. TAMAR HAGLER
Assistant United States Attorney              Deputy Chief, Housing and Civil
Chief, Civil Rights Section, Civil Division   Enforcement Section
                                              ANNA MEDINA
                                              Acting Deputy Chief, Federal Coordination
                                              and Compliance Section


/s/ Matthew Nickell                           /s/ Aurora Bryant
MATTHEW NICKELL                               AURORA BRYANT
KATHERINE M. HIKIDA                           CHRISTOPHER D. BELEN
Assistant United States Attorneys             ABIGAIL A. NURSE
Civil Rights Section, Civil Division          Trial Attorneys
                                              Housing and Civil Enforcement Section
                                              ALYSSA C. LAREAU
                                              Trial Attorney
                                              Federal Coordination and Compliance Section

                                              *Attorneys for the United States of America*

---

[7] While these reports contain counts for certain crime categories in Hesperia, they lack breakdowns by address. Without addresses, one cannot determine what the proportion of crimes at rental properties is, or how the geographic distribution of crimes compares with Crime Free's enforcement distribution and thus whether the program targeted individuals or areas discriminatorily for reasons unrelated to the incidence of crime.